UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                   Plaintiff,<br><br>    v.<br><br>ANTHONY BRANDEL and JAMES WARRAS,<br><br>                   Defendants. | Case No. 2:13-cr-439-KJD-VCF<br><br>OPINION, ORDER on RESTITUTION and FINAL ORDER of FORFEITURE |

Presently before the Court is the Government's Motion for Forfeiture as to James Warras (#296). Defendant Warras filed a response in opposition (#311) to which the Government replied (#322). Also before the Court is the Government's Motion for Forfeiture as to Anthony Brandel (#298). Defendant Brandel filed a response in opposition (#314) to which the Government replied (#323). Also before the Court is the Government's Motion in Support of Restitution (#297). Defendant Warras filed a response in opposition (#312) as did Defendant Brandel (#315) to which the Government replied (#321).[1] Defendant Brandel filed a Supplemental Response (#365) to the Government's motions which the Government replied to (#367).

The Government also moved to Strike Government's Statement in Closing Argument Based on a Mathematical Miscalculation of Exhibit K (#366).

Also before the Court is Defendant Brandel's late filed Motion to Adjust Restitution and

---

[1] After the January 16, 2018 hearing on restitution and forfeiture, the Court entered a minute order (#368) which granted the motions for forfeiture and restitution. Further, the Court disposed of the Supplemental Response (#365) of Brandel, wherein he essentially argued that he should not only not be liable for restitution or forfeiture but that he was actually innocent of the charges for which he was convicted. However, the Court denied the Supplement at the hearing as untimely and then denied it by minute order on the merits. Further, the Court had previously granted a motion in limine by the Government which forbade the Defendants from re-arguing their actual innocence at the restitution and forfeiture hearing.

Forfeiture (#371). The Government filed a response in opposition (#373).

Also before the Court is the Government's Motion to Add GW's Loss to Restitution and to Replace EG with JE, as the actual victim of the monetary loss (#372). Defendant James Warras filed a response in opposition (#375) to which the Government replied (#376/379). Defendant Brandel filed a late opposition (#381).[2] The Government also filed a Motion for Entry of Opinion, Restitution Order and Final Order of Forfeiture (#374). Defendant Warras filed a response in opposition (#377) to which the Government replied (#378/380).

## I. PROCEDURAL HISTORY and FACTUAL FINDINGS

A jury found Anthony Brandel guilty of Counts 1, 3, 4, 6, 7, 9-13, 15-18, 21-24 of the Indictment, and Defendant James Warras guilty of Counts 1, 3-5, 11-13, 15-17, 19, and 23-24 of the Indictment. See Minutes of Jury Trial, ECF No. 208; Jury Verdict, ECF No. 215. The Court found that Anthony Brandel shall pay the *in personam* criminal forfeiture money judgment of $4,920,000 pursuant to Fed. R. Crim. P. 32.2(b)(1) and (2); Title 18, United States Code, Section 981(a)(1)(C) with Title 28, United States Code, Section 2461(c); and Title 21, United States Code, Section 853(p). Indictment, ECF No. 1; Minutes of Jury Trial, ECF No. 208; Jury Verdict, ECF No. 215; Amended Preliminary Order of Forfeiture, ECF No. 237. The Court found that James Warras shall pay the *in personam* criminal forfeiture money judgment of $4,920,000 pursuant to Fed. R. Crim. P. 32.2(b)(1) and (2); Title 18, United States Code, Section 981(a)(1)(C) with Title 28, United States Code, Section 2461(c); and Title 21, United States Code, Section 853(p). Indictment, ECF No. 1; Minutes of Jury Trial, ECF No. 208; Jury Verdict, ECF No. 215; Preliminary Order of Forfeiture, ECF No. 276.

On January 16, 2018, the Court held the evidentiary hearing and oral argument for the sentencing on restitution and forfeiture, with testimony from Federal Bureau of Investigation (FBI) Special Agent Gene Tierney and FBI Forensic Account Gary Daniel Marsh and admitted exhibits that the Court found relevant and reliable (ECF Nos. 368, 369). The Court finds the rules of evidence do not apply and relevant and reliable hearsay can be used in restitution and forfeiture. See U.S. Sentencing Guidelines (U.S.S.G.) § 6A1.3(a); Fed. R. Crim. P.

---

[2] The Government filed a Motion to Strike (#382/383) Brandel's late opposition.

1  32.2(b)(1)(B); <u>United States v. Newman</u>, 659 F.3d 1235, 1245 (9th Cir. 2011), *cert. denied*, 566

2  U.S. 915 (2012), *abrogated on other grounds,* Honeycutt v. United States, 137 S. Ct. 1626, 1632

3  and 1635 (2017); <u>United States v. Huckins</u>, 53 F.3d 276, 279 (9th Cir. 1995); <u>United States v.</u>

4  <u>Petty</u>, 982 F.2d 1365, 1369 (9th Cir.), *amended*, 992 F.2d 1015 (9th Cir. 1993); <u>United States v.</u>

5  <u>Riley</u>, 143 F.3d 1289, 1292 (9th Cir. 1998); <u>United States v. Grice</u>, 319 F.3d 1174, 1178-79 (9th

6  Cir.); <u>United States v. Brock-Davis</u>, 504 F.3d 991, 999 (9th Cir. 2007); <u>In re Her Majesty the</u>

7  <u>Queen in Right of Canada</u>, 785 F.3d 1273, 1276 (9th Cir. 2015).

8        The Court finds the guilt phase of the government's witnesses' testimonies and the trial

9  admitted exhibits are relevant and reliable. The Court finds the sentencing witnesses and exhibits

10  are relevant and reliable evidence: A, A-1, A-1-a, A-1-b, A-1-c, A-1-d, A-1-e, A-1-f, A-1-g, A-

11  1-h, B, C, C-1, D, D-2, E, E-1, E-2, F, F-1, F-2, F-3, F-4, F-4-a, F-4-b, F-4-c, F-4-d, F-4-e, F-4-f,

12  F-5, F-6, F-7, G, G-1, G-2, G-2-a, G-2-b, G-2-c, G-2-d, G-2-e, G-2-f, G-2-g, G-2-h, G-7, G-7-a,

13  G-7-b, H, H-1, H-1-a, H-1-b, H-1-c, H-1-d, H-1-e, H-1-f, H-1-g, H-1-h, 801, 802, 803, 805, I, J,

14  K, M, and N. The Court finds the statements of the SEC attorneys explaining how they obtained

15  the information, made the exhibits, and only Brandel's statements that are against his interest in

16  Ex. M are relevant and reliable evidence.

17  **II RESTITUTION**

18      **A. The victims' actual losses are $6,475,000 under the Mandatory Victim Restitution**

19      **Act.**

20        The Court finds the following are victims with actual losses of Brandel's and Warras's

21  wire fraud scheme and conspiracy to commit wire fraud: GL lost $225,000, N&NA lost

22  $350,000, JS lost $300,000, JH lost $150,000, EK lost $430,000, MB lost $250,000, GD lost

23  $200,000, MK lost $200,000, TF lost $1,000,000, JA lost $540,000, WB lost $330,000, LB lost

24  $300,000, DM lost $400,000, JE lost $500,000, W&CG lost $1,200,000, and GW lost $100,000

25  because of Brandel's and Warras's criminally convicted conduct. The located victims' actual

26  loss is $6,475,000.[3] Admitted exhibits at trial and at sentencing and testimony at trial and

27

28      [3] This dollar amount is based on GW's loss of $100,000. Having read and considered the Government's Motion to Add GW's Loss to Restitution and to Replace EG with JE, as the actual victim of the monetary loss (#372) and the oppositions and replies, the Court finds that a preponderance of the evidence supports the Government's

sentencing.

**B. The Mandatory Victim Restitution Act applies to this case.**

The Mandatory Victim Restitution Act ("MVRA") requires a restitution order at sentencing where defendants' criminal conduct caused the victims' losses, including offenses committed by fraud or deceit. <u>See</u> 18 U.S.C. §§ 3663A(a)(1) and (c)(1)(A)(ii) and 3664(e) and (f)(1)(A); <u>United States v. Lo</u>, 839 F.3d 777, 788-789 (9th Cir. 2016); <u>United States v. Eyraud,</u> 809 F.3d 462, 467 and 469 (9th Cir. 2015); <u>United States v. Hymas</u>, 780 F.3d 1285, 1293 n.4 (9th Cir. 2015); <u>United States v. Hunter</u>, 618 F.3d 1062, 1064 (9th Cir. 2010); <u>United States v. Gossi</u>, 608 F.3d 574, 578-79 (9th Cir. 2010); <u>United States v. Peterson</u>, 538 F.3d 1064, 1074-75 (9th Cir. 2008); <u>United States v. De La Fuente</u>, 353 F.3d 766, 769 (9th Cir. 2003). The Court finds that since the jury found Brandel and Warras committed a scheme of wire fraud and securities fraud and a conspiracy to commit a scheme of wire fraud and securities fraud, the MVRA requires the Court order restitution to the victims.

**1. The Defendants are jointly and severally liable for restitution of $6,475,000.**

The Court must impose the full amount of restitution for the identifiable victims' losses without consideration of the defendant's economic circumstances (18 U.S.C. § 3664(f)(1)(A)), or when more than one defendant contributed to the victims' losses, may apportion the restitution amounts among the defendants to reflect their level of contribution to the victims' losses and the economic circumstances of each defendant (18 U.S.C. § 3664(h)), and has discretion to decide the monthly payment towards the restitution (18 U.S.C. § 3664(f)(3)(B)). <u>See</u> 18 U.S.C. § 3664(f)(1)(A), (f)(3)(B), and (h); <u>United States v. Hankins</u>, 858 F.3d 1273, 1276 (9th Cir. 2017); <u>Grice</u>, 319 F.3d at 1177; <u>United States v. Matsumaru</u>, 244 F.3d 1092, 1108-09 (9th Cir. 2001); <u>United States v. Dubose</u>, 146 F.3d 1141, 1148 (9th Cir. 1998), *as amended on denial of reh'g* (Aug. 31, 1998); <u>United States v. Hymas</u>, 582 F. App'x, 770, 770-71 (9th Cir. 2014); <u>United States v. Reed</u>, 84 F. App'x 983, 987 (9th Cir. 2004).

When the Court asked the defendants if they wanted apportionment at sentencing regarding restitution, they wanted joint and several liability rejecting apportionment. Even if the

motion and the motion is **GRANTED**.

defendants were to request apportionment, and it certainly appears that Warras has requested apportionment, the Court has discretion to apportion the restitution amounts or not to apportion and to order joint and several liability. 18 U.S.C. § 3664(h); United States v. Booth, 309 F.3d 566, 575-76 (9th Cir. 2002); Hymas, 582 F. App'x at 770-71.

The Court may deny apportionment when the defendants are blameworthy regarding their convicted crimes, play essential roles in the scheme to commit wire fraud and securities fraud and conspiracy to commit such scheme of fraud, have culpability, and are partially responsible for the victims' losses. Id. The Court may also deny apportionment because restitution is to make the victims whole, not punish the defendants. Hymas, 582 F. App'x at 771; Newman, 659 F.3d at 1241, *abrogated on other grounds*, Honeycutt, 137 S. Ct. at 1632 and 1635; Hunter, 618 F.3d at 1064. The Court finds the defendants are jointly and severally liable for restitution of $6,475,000.

**2. Preponderance of the Evidence is the Standard of Proof for Restitution**.

"The standard of proof for restitution proceedings is preponderance of the evidence as opposed to the standard of clear and convincing evidence required of a sentencing enhancement with a disproportionate impact." Hymas, 780 F.3d at 1293 n.4; 18 U.S.C. §§ 3663A(a)(1) and (c)(1)(A)(ii) and 3664(e) and (f)(1)(A); In re Her Majesty the Queen in Right of Canada, 785 F.3d at 1276; Peterson, 538 F.3d at 1075. The Court finds that the government has met its burden of proof as to the amount of loss sustained by the victims and the Court finds by a preponderance of the evidence that restitution should be ordered, jointly and severally, against defendants.

**3. The victims are defined under the MVRA.**

Under the MVRA, a victim is (1) "a person" directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered; or (2) in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendants' conduct in the course of the scheme, conspiracy, or pattern. 18 U.S.C. § 3663A(a)(2); see Lo, 839 F.3d at 788; Gossi, 608 F.3d at 579; Peterson, 538 F.3d at 1074; De La Fuente, 353 F. 3d at 771-772. Under the MVRA, the definition of a person

includes an entity. See Gossi, 608 F.3d at 576-579; De La Fuente, 353 F.3d at 769.

The Court finds the victims in this case were directly and proximately harmed because Brandel's and Warras's offenses involved a scheme to commit wire fraud and securities fraud and a conspiracy to commit a scheme of wire fraud and securities fraud. This Court finds that whether the money came from a person or his or her corporation in this case, they were still victims under the MVRA.

**4. Defendants' fraudulent statements are the causation of the victims' loss.**

Defendants' fraudulent statements caused the victims' loss. See Peterson, 538 F.3d at 1075. This is true even when the statements were not the sole factor in causing the victims' loss. Id. (citing United States v. Spicer, 57 F.3d 1152, 1159 (D.C. Cir. 1995)); De la Fuente, 353 F. 3d at 774-75; United States v. Hackett, 311 F.3d 989, 992-93 (9th Cir. 2002). It is likely in this case that Defendants' fraud was the sole factor, but even if it was not, the victims were unlikely to have invested their money had they known the true financial standing of the "Malom Group". The Court finds the defendants made numerous fraudulent statements to the victims in this case to further their scheme to commit wire fraud and securities fraud and their conspiracy to commit a scheme of wire fraud and securities fraud. This Court finds Brandel's and Warras's fraudulent statements were the causation of the victims' losses.

**5. Restitution includes victims' losses not included in counts of the indictment where the defendants committed crimes that include a scheme, a conspiracy, or a pattern, which are closely related to them.**

Where defendants are "convicted of crimes that require proof of a scheme, conspiracy, or pattern of criminal activity . . . restitution may be ordered for all persons directly harmed by the entire scheme. Such restitution is not limited to harm caused by the particular counts of conviction. In this context, a restitution order may be based on related but uncharged conduct that is part of a fraud scheme." In re Her Majesty the Queen in Right of Canada, 785 F.3d at 1276; see Lo, 839 F.3d at 788; Brock-Davis, 504 F.3d at 999; Grice, 319 F.3d at 1177-79.

The Court finds that since Brandel and Warras are guilty of a scheme to commit wire fraud and securities fraud and a conspiracy to commit a scheme of such, the Court may

order restitution for all victims directly harmed by the entire scheme, including those not in counts of conviction. This Court finds the government proved by preponderance of the evidence the victims were directly harmed by the entire scheme and conspiracy in which Brandel and Warras participated extensively and were convicted.

The harm to the victim must be closely related to the scheme or conspiracy, rather than tangentially linked. See Riley, 143 F.3d at 1292. The Court finds the harm to the victims who were not included in the indictment are closely related to defendants' scheme and conspiracy with the victims who were in the indictment. The Court finds by a preponderance of the evidence: (1) the victims in the guilt phase and the additional victims at sentencing are victims as defined in the MVRA; (2) Anthony Brandel and James Warras caused the direct and proximate harm to the victims; (3) under the scheme and conspiracy, Anthony Brandel and James Warras caused the direct harm to the victims; (4) Anthony Brandel and James Warras were the causation of the victims' losses through their fraudulent statements; and (5) Anthony Brandel's and James Warras's crimes against the victims that were not in the indictment are closely related to the conduct Anthony Brandel and James Warras committed against the victims who were named in the indictment and finds by preponderance of the evidence that: (a) the joint venture agreements with Malom Group AG or NAS were alike, (b) the escrow agreements were alike, (c) the fraudulent bank statements were alike, (d) Anthony Brandel and James Warras criminal conduct were alike, (e) the flow the victims' money from their accounts to escrow accounts and from the escrow accounts to the same criminals, including Anthony Brandel and James Warras, were alike, (f) Anthony Brandel's and James Warras's scheme and artifice to defraud were alike, (g) Brandel's and Warras's conspiracy were alike, (h) Anthony Brandel's and James Warras's criminal pattern were alike, (i) Anthony Brandel's and James Warras's causation were alike, (j) Anthony Brandel's and James Warras's modus operandi were alike, (k) Anthony Brandel's and James Warras's direct harm were alike, (k) Anthony Brandel's and James Warras's direct and proximate harm were alike, (l) the time periods were alike, (m) the removal of the money in escrow by distributing it to the defendants without approved financial transactions were alike, and (n) Anthony Brandel's and James Warras's lulling the victims with

the fraudulent statements that the money would be returned were alike.  See Admitted exhibits at trial and at sentencing; testimony at trial and sentencing; see Lo, 839 F.3d at 788-789; Eyraud, 809 F.3d at 467 and 469; In re Her Majesty the Queen in Right of Canada, 785 F.3d at 1276; Hymas, 780 F.3d at 1293 n.4; Hunter, 618 F.3d at 1064; Gossi, 608 F.3d at 578-79; Peterson, 538 F.3d at 1074-75; Brock-Davis, 504 F.3d at 999; United States v. Decoud, 456 F.3d 996, 1015 (9th Cir. 2006); De La Fuente, 353 F. 3d at 769; Grice, 319 F.3d at 1177-79; Hackett, 311 F.3d at 992-93; United States v. Montgomery, 150 F.3d 983, 999 (9th Cir. 1998); United States v. Kostoff, 585 F.2d 378, 380 (9th Cir. 1978).

For these reasons, the Court finds the Government proved by preponderance of the evidence the multiple links of the victims' money to the defendants is a causal chain, and no intervening cause existed regarding the fraudulently obtained money from the victims to the defendants. See Id.

"The government need not show direct contact or explicit agreement between the defendants. It is sufficient to show that each defendant knew or had reason to know of the scope of the conspiracy and that each defendant had reason to believe that his own benefits were dependent on the success of the entire venture." Montgomery, 150 F.3d at 999 (citation and brackets omitted) (quoting Kostoff, 585 F.2d at 380). When the defendants' criminal activities were "not limited to a single transaction", and the defendants "played a variety of roles" in the organization, they are liable for the entire conspiracy. See Decoud, 456 F.3d at 1015.

The Court finds the admitted evidence at trial and sentencing and the testimony at trial and sentencing proved by preponderance of the evidence that Brandel and Warras were part of the conspiracy and the scheme to defraud; knew the scope of the conspiracy and the scheme to defraud; knew they were dependent on the success of the entire scheme and conspiracy to receive their benefits, the proceeds of the fraudulently obtained money; were involved in numerous transactions; and played a variety of roles in the conspiracy.

The Court finds, pursuant to 18 U.S.C. §§ 3663A and 3664, Brandel should pay restitution of $6,475,000 and Warras should pay restitution of $6,475,000 to the victims, jointly and severally liable with each other and with any other convicted codefendants.[4]

## III. FORFEITURE

### A. The forfeiture statutes in the indictment authorize criminal forfeiture money judgments.

18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(p), the forfeiture statutes alleged in the forfeiture allegation of the Indictment (#1), support criminal forfeiture money judgments. See Newman, 659 F.3d at 1242; United States v. Casey, 444 F.3d 1071, 1076 (9th Cir. 2006); Phillips, 704 F.3d at 771; Fed. R. Crim. P. 32.2(b)(1); 28 U.S.C. § 2461(c); Fed. R. Crim. P. 32.2(e); 21 U.S.C. § 853(p); Honeycutt, 137 S. Ct. at 1633-34; Lo, 839 F.3d at 780, 782-783, 790-792. The Court finds Defendants' crimes of which they were convicted have forfeiture statutes that authorize criminal forfeiture money judgments.

### B. The illegal proceeds of defendants' scheme and conspiracy are the gross proceeds.

The Court finds illegal proceeds are total gross proceeds obtained, acquired, or possessed with dominion and control in a scheme of fraud and a conspiracy to commit a scheme of such fraud. See 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c); Honeycutt, 137 S. Ct. at 1632; United States v. Christensen, 828 F.3d 763, 822-24 (9th Cir. 2016); Newman, 659 F.3d at 1243; Casey, 444 F.3d at 1073-74, 1076; Lo, 839 F.3d at 792-794. The Court finds the gross proceeds of this scheme to commit wire fraud and securities fraud and conspiracy to commit such scheme are $10,399,725. Admitted exhibits and testimony at trial and sentencing, including, but not limited to, Ex. I, N.

The Government argued that the Court should order a criminal forfeiture money judgment of $4,920,000.00 based on an agreement between DOJ attorney Young and Mr. Smith, Anthony Brandel's attorney. Anthony Brandel denied he authorized his counsel to make the deal

---

[4] The Court finds that there is no constitutional or statutory right to a jury determination on restitution or restitution amounts. See Green, 722 F.3d 1146, 1151 (9th Cir. 2013); Dubose, 146 F.3d at 1148; 18 U.S.C. §§ 3663, 3663A, 3563(a)(2),(b)(2), 3583(d).

(ECF No. 371, p. 1-2). Based on Anthony Brandel's statement that he never authorized the deal,[5] the Court finds Brandel obtained, acquired, and possessed with dominion and control $8,849,725 of the fraudulently obtained illegal proceeds through Commercial Escrow Services ("CES") and $100,000 through MY Consultants as to B&CG. Exhibits N and K; admitted exhibits and testimony at trial and sentencing. Brandel dictated to Toni Hardstone of CES when and to whom the $8,849,725 went before the Joint Venture Agreement authorized such and even without signed escrow instructions. Exhibit N; admitted exhibits and testimony at trial and sentencing. Brandel determined when and to whom the fraudulently obtained illegal proceeds went from MY Consultants, including the $100,000 through MY Consultants as to B&CG. Exhibits N, K, and M; admitted exhibits and testimony at trial and sentencing.

The Court finds the government proved by a preponderance of the evidence per Honeycutt that Brandel obtained, acquired, or possessed with dominion and control $8,949,725 from the scheme to commit wire fraud and securities fraud and conspiracy to commit a scheme of such fraud. However, the Court accepts the admission by the United States that they were limited to seeking a criminal forfeiture money judgment of $4,920,000.00. The Court orders Brandel to pay a criminal forfeiture money judgment of $4,920,000.00. Admitted exhibits and testimony at trial and sentencing, including, but not limited to, Ex. J, K, M, N.

In the Preliminary Order of Forfeiture, the government moved and the Court ordered Warras to pay a criminal forfeiture money judgment of $4,920,000 pursuant to Fed. R. Crim. P. 32.2(b)(1) and (2); 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c); and 21 U.S.C. § 853(p). However, the government then moved to lower Warras's criminal forfeiture money judgment to $876,750 to reflect the holding in Honeycutt.

The Court finds the government proved by preponderance of the evidence per Honeycutt that Warras obtained, acquired, or possessed with dominion and control $876,750 from the

---

[5] In Anthony Brandel's latest Motion to Adjust Restitution and Forfeiture (#371), he declared he did not authorize his attorney, Mr. Smith, to obtain a better deal for Anthony Brandel regarding the criminal forfeiture money judgment of $4,920,000 (ECF No. 371, p. 1-2). To protect his rights, the government requested in its Response (ECF No. 373) to order the criminal forfeiture money judgment of $8,949,725. However, the Court had already ruled upon forfeiture two weeks prior to Brandel's Motion to Adjust ordering forfeiture against Brandel in the amount of $4,920,000.00. Therefore, the Court finds that though the adduced evidence could support a criminal forfeiture money judgment of $8,4949,725.00, the issue was moot before Brandel filed the Motion to Adjust.

scheme to commit wire fraud and securities fraud and conspiracy to commit such a scheme. Admitted exhibits and testimony at trial and sentencing, including, but not limited to, Ex. J, K, M, N. This Court orders Warras to pay a criminal forfeiture money judgment of $876,750.[6]

**C. Ordering forfeiture and restitution does not violate the Double Jeopardy Clause of the Fifth Amendment and does not create an improper double recovery.**

The Court finds ordering forfeiture and restitution at sentencing does not violate the Double Jeopardy Clause of the Fifth Amendment. See Monge v. California, 524 U.S. 721, 728 (1998); Hudson v. United States, 522 U.S. 93, 98 (1997). The Double Jeopardy Clause "protects only against the imposition of multiple *criminal* punishments for the same offense, and then only when such occurs in successive proceedings." Hudson, 522 U.S. at 99; see United States v. Hickey, 367 F.3d 888, 892 (9th Cir. 2004), *opinion amended on denial of reh'g*, 400 F3d. 658 (9th Cir. 2005).

The Court finds defendants' argument that multiple financial penalties for the same crime at sentencing violates double jeopardy is not supported by law. In every criminal case this Court may or must, depending on the statutes, sentence the defendant with a fine, a special mandatory assessment, the cost of imprisonment, the cost of residential re-entry center, the cost of supervised release, restitution, and forfeiture (see, e.g., 18 U.S.C. §§ 982, 981 with 28 U.S.C. § 2461(c), 1963, 3013, 3554, 3556, 3571, 3572, 3574, 3611, 3663, 3663A, and 3664; U.S.S.G. §§ 5E1.1, 5E1.2, and 5E1.2(d)(7); and 21 U.S.C. §§ 853 and 881 with 28 U.S.C. § 2461(c)) in addition to imprisonment, supervised release, or probation). The Court finds double jeopardy is not violated in this case because the Court orders restitution, the forfeiture, and the other financial obligations at sentencing and no successive proceedings occur.

Restitution and forfeiture are separate and distinct, serving completely different purposes. Restitution makes the victim whole again. See Newman, 659 F.3d at 1241-42; Hunter, 618 F.3d at 1064; United States v. Davis, 706 F.3d 1081, 1082-84 (9th Cir. 2013). Davis rejected the

---

[6] The Court finds that no constitutional right exists for a jury determination of criminal forfeitures. See Libretti v. United States, 516 U.S. 29, 49 (1994); Christensen, 828 F.3d at 821-22; Phillips, 704 F.3d at 769-71. Additionally, the Court finds no statutory right exists for a jury to decide criminal forfeiture money judgments. See Fed. R. Crim. P. 32.2(b)(1)(A) and (B), (b)(2)(A), and (b)(5)(A) and (B); Christensen, 828 F. 3d at 822; Phillips, 704 F.3d at 771; Newman, 659 F.3d at 1242 -43.

double recovery argument for forfeiture and restitution since they serve different purposes. <u>See Id.</u>; <u>United States v. Boulware</u>, 384 F.3d 794, 813 (9th Cir. 2004); <u>United States v. Bright</u>, 353 F.3d 1114, 1125 (9th Cir. 2004); <u>United States v. Feldman</u>, 853 F.2d 648, 663–64 (9th Cir. 1988). Similarly, the Second, Fifth, Sixth, Seventh, Tenth, and Eleventh Circuits have rejected the argument that ordering forfeiture and restitution violates Double Jeopardy. <u>See United States v. Peters</u>, 732 F.3d 93, 100 (2d Cir. 2013); <u>United States v. Kalish</u>, 626 F.3d 165, 169 (2d Cir. 2010); <u>United States v. Taylor</u>, 582 F.3d 558, 565–66 (5th Cir. 2009); <u>United States v. Corrado</u>, 227 F.3d 543, 549-551 (6th Cir. 2000); <u>United States v. Venturella</u>, 585 F.3d 1013, 1019-20 (7th Cir. 2009), *cert. denied*, 559 U.S. 955 (2010).

## IV. EIGHTH AMENDMENT

**A. Under the Law-of-the-Circuit, *Bajakajian* does not undercut the theory, the reasoning, and the facts of the Ninth Circuit case law that holds illegal proceeds do not violate the Eighth Amendment, and *Bajakajian* is NOT clearly irreconcilable with them.**

The law-of-the-circuit rule states, "a published decision of this court constitutes binding authority which 'must be followed unless and until overruled by a body competent to do so.' " <u>Gonzalez v. Arizona</u>, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc) (quoting <u>Hart v. Massanari</u>, 266 F.3d 1155, 1170 (9th Cir. 2001); <u>see Hart</u>, 266 F.3d at 1170-74; <u>Ross Island Sand & Gravel v. Matson</u>, 226 F.3d 1015, 1018 (9th Cir. 2000). Exceptions exist to the law-of-the-circuit rule. Where a case of the United States Supreme Court "undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable, then a three-judge panel of this court and district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled". <u>Gonzalez</u>, 677 F.3d at 389 n.4 (quoting <u>Miller v. Gammie</u>, 335 F.3d 889, 900 (9th Cir. 2003) (en banc)). Additionally, a high standard must be overcome to invoke this higher authority exception. <u>Lair v. Bullock</u>, 697 F.3d 1200, 1207 (9th Cir. 2012) (quoting <u>United States v. Delgado–Ramos</u>, 635 F.3d 1237, 1239 (9th Cir. 2011)).

This Court finds this higher authority exception to law-of-the-circuit does not apply because <u>United States v. Bajakajian</u>, 524 U.S. 321, 330 n.5 (1998) does not undercut the theory,

the reasoning, and the facts underlying <u>United States v. Feldman</u>, 853 F.2d 648 (9th Cir. 1988), <u>United States v. Real Property located at 22 Santa Barbara Drive</u>, 264 F.3d 860 (9th Cir. 2001), and <u>United States v. Guillen-Cervantes</u>, 566 F. App'x 576 (9th Cir. 2014), and <u>Bajakajian</u> is **not** clearly irreconcilable with them. The Ninth Circuit three-judge panels in <u>United States v. 3814 NW Thurman Street</u>, 164 F.3d 1191 (9th Cir. 1999), <u>United States v. Beecroft</u>, 825 F.3d 991 (9th Cir. 2016), *abrogated on other grounds*, <u>Honeycutt</u>, 137 S. Ct. at 1632 and 1635, and <u>United States v. Mosley</u>, 652 F. App'x 511 (9th Cir. 2016) did not perform, and failed to meet, this high standard to invoke this higher authority exception to the law-of-the-circuit to reject the three-judge panel decisions of <u>Feldman</u>, <u>22 Santa Barbara</u>, and <u>Guillen-Cervantes</u> that illegal proceeds are not grossly disproportionate with <u>Bajakajian's</u> reasoning, theory, and facts.

First, <u>Bajakajian</u> did not "undercut the theory or reasoning underlying" <u>Feldman</u>, *22 Santa Barbara Drive*, and <u>Guillen-Cervantes</u> and was **not** "clearly irreconcilable with" <u>Feldman</u>, <u>22 Santa Barbara</u>, and <u>Guillen-Cervantes</u>. These cases decided illegal proceeds forfeitures where <u>Bajakajian</u> decided a reporting violation forfeiture that was not an instrumentality, was not facilitating property, was legal proceeds, and was a legal livelihood.

Second, the <u>Bajakajian's</u> facts, theory, and reasoning are very different than <u>Feldman's</u>, <u>22 Santa Barbara's</u>, and <u>Guillen-Cervantes's</u> facts, theory, and reasoning regarding the Eighth Amendment.

Third, it is "far from clear" that a reporting violation forfeiture, non-instrumentality, non-facilitating property, legal proceeds, and a legal livelihood case, which is punishment under the Eighth Amendment, would apply to an illegal proceeds case.

Fourth, illegal proceeds forfeitures are "not clearly punishment" since the defendants do not own the property (<u>see</u> <u>United States v. $4,224,958.57</u>, 392 F.3d 1002, 1004 (9th Cir. 2004); <u>Caplin & Drysdale, Chartered v. United States</u>, 491 U.S. 617, 626 (1989); <u>United States v. Hooper</u>, 229 F.3d 818, 821 22 (9th Cir. 2000)). It is not the defendant's legal livelihood, it is not the defendant's legal proceeds, it is not a facilitating property, and it is not an instrumentality.

Since the three-judge panels of <u>Thurman</u>, <u>Beecroft</u>, and <u>Mosley</u> did not perform this required law-of-the-circuit analysis on <u>Feldman</u>, <u>22 Santa Barbara</u>, and <u>Guillen-Cervantes</u>, the

law-of-the-circuit higher authority exception does not apply to <u>Feldman</u>, <u>22 Santa Barbara</u>, and <u>Guillen-Cervantes</u>. <u>See</u> <u>Hart</u>, 266 F.3d at 1170-71; <u>Green</u>, 722 F.3d at 1149-51; <u>Miller</u>, 335 F.3d at 893 and 899-900. Even if the three-judge panels had performed the law of-the-circuit analysis, <u>Bajakajian</u> did not undercut the theory, reasoning, and facts underlying <u>Feldman</u>, <u>22 Santa Barbara</u>, and <u>Guillen-Cervantes</u> and was not clearly irreconcilable. <u>See</u> <u>Green</u>, 722 F.3d at 1149-51; <u>Miller</u>, 335 F.3d at 893 and 899-900.

The law-of-the-circuit rule "binds all courts within a particular circuit, including the court of appeals itself[]" unless overruled in an en banc review. <u>See</u> <u>Hart</u>, 266 F.3d at 1170-71 (brackets added). The three-judge panels failed to request en banc reviews as required by the law-of-the-circuit. <u>See</u> <u>Id.</u> The cases of <u>Feldman</u>, <u>22 Santa Barbara</u>, and <u>Guillen-Cervantes</u>, are not overturned and are valid binding precedent under the law-of-the-circuit. <u>See</u> <u>Hart</u>, 266 F.3d at 1170-71. <u>Thurman</u>, <u>Beecroft</u>, and <u>Mosley</u> are not binding precedent under the law-of-the-circuit. <u>See Id</u>.

This Court finds, under the law-of-the-circuit higher authority exception, <u>Bajakajian</u> does not undercut the theory, the reasoning, and the facts underlying <u>United States v. Feldman,</u> 853 F.2d 648 (9th Cir. 1988), <u>United States v. Real Property located at 22 Santa Barbara Drive</u>, 264 F.3d 860 (9th Cir. 2001), and <u>United States v. Guillen-Cervantes</u>, 566 F. App'x 576 (9th Cir. 2014) and is **not** clearly irreconcilable with them. <u>Feldman</u>, <u>22 Santa Barbara</u>, and <u>Guillen-Cervantes</u> are the law-of-the-circuit cases and apply to this case.

**B. When the three-judge panels for <u>Thurman</u>, <u>Beecroft</u>, and <u>Mosley</u> saw the clearly Irreconcilable Intracircuit Conflict with <u>Feldman</u>, <u>22 Santa Barbara</u>, and <u>Guillen-Cervantes</u>, the three-judge panels were required to request an en banc review.**

The intracircuit conflict rule states where a three-judge panel has a clearly irreconcilable intracircuit conflict, the panel must request sua sponte an en banc review to decide the case, unless the prior cases are distinguishable. The purposes of the intracircuit conflict rule are to ensure conflicts are avoided, the majority of the circuit court judges control uniformity and continuity of circuit decisions, judicial effective administration is achieved, finality of decisions is promoted, and the circuit court will determine the future doctrinal trends of the circuit. <u>See</u>

Fed. R. App. P. 35(a); Atonio v. Wards Cove Packing Co., 810 F.2d 1477, 1478-79 (9th Cir. 1987) (en banc), *cert. denied*, 485 U.S. 989 (1988); Hart, 266 F.3d at 1179; *Ross*, 226 F.3d at 1018; United States v. Am.-Foreign S. S. Corp., 363 U.S. 685, 689-90 (1960); Textile Mills Sec. Corp. v. C.I.R., 314 U.S. 326, 335 (1941). A three-judge panel cannot choose one of the conflicting authorities. See Atonio, 810 F.2d at 1478.

Thurman, Beecroft, and Mosley are not distinguishable from Feldman, 22 Santa Barbara, and Guillen-Cervantes because all were illegal proceeds cases where no ownership, no legitimate income, no legal livelihood, no instrumentalities, no facilitating property, and no reporting violation existed. The Thurman, Beecroft, and Mosley three-judge panels should have followed Feldman, 22 Santa Barbara, and Guillen-Cervantes. When a three-judge panel is presented with a clearly irreconcilable intracircuit conflict between Thurman, Beecroft, and Mosley and Feldman, 22 Santa Barbara, and Guillen-Cervantes concerning illegal proceeds, the three-judge panels must request an en banc review. See United States v. Hardesty, 977 F.2d 1347, 1348 (9th Cir. 1992) (en banc); Antonio, 810 F.2d at 1478-79.

Thurman, Beecroft, and Mosley are clearly irreconcilable with Feldman, 22 Santa Barbara, and Guillen-Cervantes for the reasons given in the previous paragraph. The intracircuit conflict rule required the three-judge panels to request sua sponte an en banc review to resolve the clearly irreconcilable intracircuit conflict of these cases. Since the three-judge panels in Thurman, Beecroft, and Mosley did not request an en banc review as required under the intracircuit conflict rule, Feldman, 22 Santa Barbara, and Guillen-Cervantes are not overturned and are valid binding precedent. See Hart, 266 F.3d at 1170-71.

**C. The Eighth Amendment Excessive Fines Clause does not apply to Illegal Proceeds.**

The United States Supreme Court states, "Traditionally, forfeiture was an action against the tainted property itself and thus proceeded *in rem* …" "wholly unaffected by any criminal proceeding *in personam* …." Honeycutt, 137 S. Ct. at 1634-35 (citation and quotation marks omitted) (quoting The Palmyra, 25 U.S. 1 (1827)). Eight of the States had an equivalent to the Eighth Amendment in their Declarations of Rights or State Constitutions. See Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 264 (1989). After the

constitutional and the State conventions adopted the United States Constitution, Congress and the States adopted the Bill of Rights, including the Eighth Amendment. See Browning-Ferris, 492 U.S. at 264-267; Solem v. Helm, 463 U.S. 277, 285 n.10 (1983); Ingraham v. Wright, 430 U.S. 651, 664-66 (1977). The Eighth Amendment was based on the Art. I, § 9 of the Virginia Declaration of Rights, adopting verbatim the language of the 1689 English Bill of Rights. Id.

The 1215 English Magna Carta addressed the excessive taking of legal proceeds, legal property, legal livelihood, and owned property for crimes. The 1215 English Magna Carta did not address illegal proceeds. See Bajakajian, 524 U.S. at 332; Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 682 (1974). The 1689 English Bill of Rights was passed to curb the excessive takings by Kings, Queens, and their judges of legal proceeds, legal property, legal livelihoods, and owned property, not illegal proceeds. See Browning-Ferris, 492 U.S.at 266 67; Ingraham, 430 U.S. at 664-65 and n.33. Since the 1689 English Bill of Rights did not address illegal proceeds, they are not excessive. Because the Eighth Amendment is based on the 1215 English Magna Carta, the 1689 English Bill of Rights, and the Virginia Declaration of Rights, it does not address and does not apply to illegal proceeds, which are not the defendants' instrumentalities, legal proceeds, legal property, legal livelihoods, facilitating property, and owned property.

The United States Congress adopted only statutory in rem civil forfeitures, rejecting all other types of forfeitures until 1970. See Austin v. United States, 509 U.S. 602, 611-12 (1993); Calero-Toledo, 416 U.S. at 680-83; Bajakajian, 524 U.S. at 332 and n.7. The statutory civil forfeitures forfeited facilitating property and instrumentalities, namely property used to violate the law. See Austin, 509 U.S. at 612-15; Calero-Toldeo, 416 U.S. at 682; United States v. Parcel of Land, Bldgs., Appurtenances & Improvements, Known as 92 Buena Vista Ave., Rumson, N.J., 507 U.S. 111, 121–23 (1993) (plurality). In 1970's, the United States Congress approved criminal forfeitures for the first time. See Bajakajian, 524 U.S. at 332 n.7; 92 Buena Vista Ave., 507 U.S. at 121–23. As time passed, Congress added more criminal forfeitures and provided in 2000 that the hundreds of civil forfeiture statutes could also be criminal forfeitures. See 28 U.S.C. § 2461(c); Newman, 659 F.3d at 1239.

In 1978, illegal drug proceeds became forfeitable. In 1984, illegal RICO proceeds became forfeitable. In 1986, illegal proceeds became forfeitable for other crimes. See 92 Buena Vista Ave., 507 U.S. at 121 n.16. In 1989, the reporting violation forfeitures came into existence when the Supreme Court stated the funds were not an instrumentality, were not facilitating property, and were not illegal proceeds. See Bajakajian, 524 U.S. at 329-334, 338, 340-343. Illegal proceeds forfeitures are different than reporting violation forfeitures, instrumentality forfeitures, and facilitating property forfeitures. Bajakajian, Austin, and Alexander did not focus on civil forfeitures versus criminal forfeitures but focused on punishment. Austin and Alexander focused on whether criminal and civil facilitating property was punishment. See Austin, 509 U.S. at 604-05 (holding that a civil forfeiture of a mobile home and an auto body shop under the facilitating forfeiture statutes, 21 U.S.C. § 881(a)(4) and (a)(7), is punishment and must be analyzed under the Excessive Fines Clause); Alexander v. United States, 509 U.S. 544, 558-59 (1993) (holding the criminal forfeiture of defendant's entire business under the facilitating forfeiture statute, 18 U.S.C. § 1963(a)(1), is punishment and must be analyzed under the Excessive Fines Clause). The discussion in Austin and Alexander centers on the difference between instrumentality and facilitating property forfeitures that were historically not punishment versus the modern civil and criminal facilitating property forfeitures being punishment due to the innocent owner defenses. "Thus, the question is not … whether forfeiture under §§ 881(a)(4) and (a)(7) is civil or criminal, but rather whether it is punishment." Austin, 509 U.S. at 610 (ellipsis added).

The Supreme Court in Austin and Alexander determined modern civil and criminal facilitating forfeitures statutes are punishment, invoking the Eighth Amendment. 0Austin, 509 U.S. at 604 and 610-622; Alexander, 509 U.S. at 558-59. Austin and Alexander addressed facilitating property, not illegal proceeds. Alexander did not address the millions of illegal proceeds that were forfeited under 18 U.S.C. § 1963(a)(3). The lower courts found the millions of illegal proceeds did not violate the Eighth Amendment. See United States v. Alexander, 32 F.3d 1231, 1236 (8th Cir. 1994); United States v. Alexander, 108 F.3d 853, 855 (8th Cir. 1997). Additionally, the Supreme Court and the Ninth Circuit hold defendants do not own illegal

proceeds. See $4,224,958.57, 392 F.3d at 1004; Caplin & Drysdale, Chartered, 491 U.S. at 626; Hooper, 229 F.3d at 821-22. Since defendants cannot own illegal proceeds, the defendants' Eighth Amendment rights are not violated when forfeiting illegal proceeds.

This Court finds the Ninth Circuit adopted the illegal proceeds grossly disproportionate analysis in Feldman, 22 Santa Barbara, and Guillen-Cervantes and that since illegal proceeds are not facilitating property, are not instrumentalities, are not a legal livelihood, are not legal proceeds, are not owned, and are not a reporting violation, the government does not violate the defendants' rights of the Excessive Fines Clause of the Eighth Amendment when forfeiting illegal proceeds.

Both prior to and subsequent to the Bajakajian decision, like the Ninth Circuit, the Second, Fifth, Sixth, Seventh, Eighth, and Tenth Circuits have held illegal proceeds do not violate the Eighth Amendment for the reasons given above. See United States v. Sum of $185,336.07 U.S. Currency Seized from Citizen's Bank Account L7N01967, 731 F.3d 189, 194 (2d Cir. 2013); United States v. Tilley, 18 F.3d 295, 300 (5th Cir.), reh'g denied, 22 F.3d 1096 (5th Cir.), cert. denied, 513 U.S. 1015 (1994); United States v. Betancourt, 422 F.3d 240, 250-51 (5th Cir. 2005); United States v. Salinas, 65 F.3d 551, 554 (6th Cir. 1995); United States v. Dusenbery, 223 F.3d 422, 425 (6th Cir. 2000), aff'd, 534 U.S. 161 (2002); Smith v. United States, 76 F.3d 879, 882 (7th Cir. 1996); United States v. Funds on Deposit at Bank One Chicago Account 1110010428312, 393 F. App'x. 391, 392 (7th Cir. 2010); Alexander, 32 F.3d at 1236; Alexander, 108 F.3d at 855; United States v. $63,530, 781 F.3d 949, 957 (8th Cir. 2015); United Staets v. One Parcel of Real Property Described as Lot 41, Berryhill Farm Estates, 128 F.3d 1386, 1395 (10th Cir. 1997); United States v. $189,825.00, 216 F.3d 1089, 7 (10th Cir. 2000) (Table).

This Court finds United States v. Bajakajian, 524 U.S. 321 (1998) does not apply to the facts of this case because the forfeitable amounts are illegal proceeds of frauds and conspiracy to commit such frauds and are not legal income or property, are not legal livelihood, are not facilitating property, are not instrumentalities, are not owned by the defendants, and are not subject to a reporting violation and finds the forfeiture of $4,920,000.00 as to Brandel and

$876,750 as to Warras does not violate the Excessive Fines Clause of the Eighth Amendment because it is illegal proceeds.

**D. The <u>Bajakajian</u> Analysis shows the forfeitures are not grossly disproportionate.**

The defendants must make a prima facie showing of an Eighth Amendment violation. See Feldman, 853 F.2d at 663; United States v. Busher, 817 F.2d 1409, 1415 (9th Cir. 1987); United States v. Ladum, 141 F.3d 1328, 1349 (9th Cir. 1998); Newman, 659 F.3d at 1241 n.4. This Court finds the defendants failed to make any showing of an Eighth Amendment violation. Bajakajian held a reporting violation forfeiture was punishment. See Id. at 327-28 (citing Austin, 509 U.S. at 609-10 and 619). Bajakajian adopted the Cruel and Unusual Punishments Clause grossly disproportionate analysis for the Excessive Fines Clause for reporting violation forfeitures. See Id. at 334-340 (citing Solem, 463 U.S. at 288; Rummel v. Estelle, 445 U.S. 263, 271 (1980)).

Based on the four factors of the Bajakajian grossly disproportionate analysis applied to these facts, this Court finds Defendants' forfeiture orders are not grossly disproportionate to the gravity of the crimes and do not violate the Excessive Fines Clause of the Eighth Amendment. This Court finds the defendants committed wire fraud, securities fraud, and conspiracy to commit such fraud for approximately four years, obtaining approximately $10,399,725 of illegal proceeds. The criminal activities were related to one another, and they committed money laundering to use the illegal proceeds for their personal use. The defendants "fit into the class of persons for whom the [forfeiture] statute was principally designed:" those who commit wire fraud, securities fraud, and conspiracy to commit such fraud and money laundering the illegal proceeds from those crimes. See Bajakajian, 524 U.S. at 338; United States v. Mackby, 339 F.3d 1013, 1017 (9th Cir. 2003). The defendants' crimes were extensive and grave. See Bajakajian, 524 U.S. at 336, 338-39.

Defendants' crimes caused many people excessive harm and damage: loss of dignity, loss of self-respect, loss of jobs, houses, and businesses, not only for the victims that were defrauded but also the families' members and companies' employees who lost their jobs because of the fraud. The United States also had "loss to the public fisc[]" Bajakajian, 524 U.S. at 339. Instead

1 of the money going to companies to expand, to add employees, and to grow the economy, which

2 would have increased taxes for the government, the defendants used the illegal proceeds for

3 greedy purposes of spending them on themselves and failing to pay taxes on the fraudulently

4 obtained illegal proceeds.

**E. Application of the <u>Bajakajian</u> analysis to Warras concerning the Excessive Fines Clause**

**1. Congressional Imprisonment.**

If the Court applied the congressional maximum imprisonment term for Warras, the term could be 245 years consecutively. <u>See</u> 18 U.S.C. §§ 371, 1343; 15 U.S.C. §§ 78j(b), 78ff; Presentence Investigation Report ("PSR"), p. 1, 19. If the Court were to group each type of crime for the congressional maximum imprisonment term, Warras could be sentenced to 45 years consecutively. The congressional maximum imprisonment shows the serious gravity of Warras's crimes.

**2. U.S. Sentencing Guidelines Imprisonment.**

If the Court applied the U.S. Sentencing Guidelines maximum imprisonment term for Warras, the term could be 108 months. PSR p.7-8, 19; U.S.S.G. §§ 3D1.2(d), 2B1.1(a)(1), 2B1.1(b)(1)(J), 2B1.1(b)(2)(A), 2B1.1(b)(9)(B), 2B1.1(b)(10)(C), 3C1.1, 5A. The U.S. sentencing guidelines maximum imprisonment shows the serious gravity of Warras's crimes.

**3. Congressional Fines.**

If the Court applied the congressional maximum fine consecutively to Warras, it could be a total of $71,598,900: $20,799,450 for the Conspiracy, $20,799,450 for the Wire Fraud, and $30,000,000 for the Security Fraud. PSR, p. 1, 19; 15 U.S.C. §§ 78j(b) and 78ff; 18 U.S.C. §§ 371, 1343, 3571, 3571(b)(1), 3571(b)(2), 3571(b)(3), 3571(b)(1)-(7), 3571(d); <u>United States v. W. Coast Aluminum Heat Treating Co.</u>, 265 F.3d 986, 988, 990 (9th Cir. 2001). The congressional maximum fines show the serious gravity of Warras's crimes.

**4. U.S. Sentencing Guidelines Fines.**

If the Court applied the U.S. Sentencing Guidelines maximum fine for Warras, it could be $30,000,000. U.S.S.G. §§ 5E1.2(c)(2), 5E1.2(c)(3), and 5E1.2(c)(4);18 U.S.C. §

3571(b)(1), b(2) and (d); 15 U.S.C. §§ 78j(b) and 78ff; PSR, p.19; United States v. Grossi, 359 F. App'x 830, 832 (9th Cir. 2009). The U.S. sentencing guidelines maximum fines show the serious gravity of Warras's crimes.

**F. Application of the *Bajakajian* analysis to Brandel concerning the Excessive Fines Clause**

**1. Congressional Imprisonment.**

If the Court applied the congressional maximum imprisonment term for Brandel, the term could be 345 years consecutively. 15 U.S.C. §§ 78j(b), 78ff; 18 U.S.C. §§ 371, 1343; PSR, p. 1-2, 15, 20. If the Court were to group each type of crime for the congressional maximum imprisonment term, Brandel could be sentenced to 45 years consecutively. The Congressional imprisonment maximum shows the serious gravity of Brandel's crimes.

**2. U.S. Sentencing Guidelines Imprisonment.**

If the Court applied the U.S. Sentencing Guidelines maximum term of imprisonment for Brandel, the term could be 108 months. 18 U.S.C. § 371; PSR p. 1, 8, 15, 20; U.S.S.G. §§ 3D1.2(d), 2B1.1(a)(1), 2B1.1(b)(1)(J), 2B1.1(b)(2)(A), and 2B1.1(b)(10)(C), 5A. The U.S.S.G. imprisonment maximum shows the serious gravity of Brandel's crimes.

**3. Congressional Fines.**

If the Court applied the Congressional maximum fine consecutively to Brandel, it could be a total of $81,598,900: $20,799,450 for the Conspiracy, $20,799,450 for the Wire Fraud, and $40,000,000 for the Security Fraud. 15 U.S.C. §§ 78j(b) and 78ff; 18 U.S.C. §§ 371, 1343, 3571(b)(1); 3571(b)(2), 3571(b)(3), 3571(b)(1)-(7), 3571(d); W. Coast Aluminum, 265 F.3d at 988 and 990; PSR, p. 1, 12, 16, 20. The Congressional maximum fines show the serious gravity of Brandel's crimes.

**4. U.S. Sentencing Guidelines Fines show the Serious Gravity of Brandel's crimes.**

If the Court applied the U.S. Sentencing Guidelines maximum fine for Brandel, it could be $45,000,000. U.S.S.G. §§ 5E1.2(c)(2), 5E1.2(c)(3), 5E1.2(c)(4); 15 U.S.C. §§ 78j(b) and 78ff; 18 U.S.C. § 3571(b)(1), 3571(b)(2) and (d); PSR, p.19; Grossi, 359 F. App'x at 832.

The U.S.S.G. maximum fines show the serious gravity of Brandel's crimes.

Since Warras's forfeiture of $876,750 and Brandel's forfeiture of $4,920,000.00 are much less than the fines this Court could have ordered them to pay, their criminal forfeiture money judgments do not violate the Eighth Amendment and are presumptively constitutional. *Grossi*, 359 F. App'x at 832; United States v. 817 N.E. 29th Drive, Wilton Manors, Florida, 175 F.3d 1304, 1309 (11th Cir. 1999); United States v. Dicter, 198 F.3d 1284 (11th Cir. 1999); United States v. Moyer, 313 F.3d 1082 (8th Cir. 2002); United States v. Wallace, 389 F.3d 483, 486 (5th Cir. 2004); United States v. Bernitt, 392 F.3d 873, 880-81 (7th Cir. 2004); United States v. Heldeman, 402 F.3d 220, 223 (1st Cir. 2005); United States v. Elfgeeh, 515 F.3d 100, 139 (2d Cir. 2008).

When applying the Bajakajian gross disproportionality analysis, the amount that can be forfeited is a multiple of the maximum amount of the fine. United States v. $100,348, 354 F.3d 1110, 1122-24 (9th Cir. 2004) (inferring two times the U.S. Sentencing Guidelines maximum fine of $5,000); Mackby, 339 F.3d at 1015, 1017 (a multiple of more than 12.5 times the amount of the loss); United States v. $132,245 in U.S. Curency, 764 F.3d 1055, 1060 (9th Cir. 2014) (explaining that "forfeiture does not per se violate the Eighth Amendment simply because the amount to be forfeited exceeds the maximum fine under the Sentencing Guidelines."); United States v. Riedl, 82 F. App'x 538 (9th Cir. 2003) (In a drug and money laundering case, the Ninth Circuit found a forfeiture order that was 12 to 13 times the maximum sentencing guideline fine was not excessive.).

Since the forfeiture amounts can be a multiple of the fines, this Court finds the defendants' criminal forfeiture money judgments do not violate the Excessive Fines Clause under Bajakajian.

**G. Warras's total punishment does not violate the Eighth Amendment.**

Since restitution is not punishment (Davis, 706 F.3d at 1084; Newman, 659 F.3d at 1241; Hunter, 618 F.3d at 1064), the district court ordering the payment of restitution does not violate the Excessive Fines Clause or Cruel and Unusual Punishments Clause of the Eight Amendment because it is already inherently proportional and is inherently linked to the offender's culpability.

Beecroft, 825 F.3d at 997, *abrogated on other grounds*, Honeycutt, 137 S. Ct. at 1632 and 1635; Dubose, 146 F.3d at 1147.

The Court finds Warras's total punishment, including the forfeiture and the restitution, is not grossly disproportionate and does not violate the Excessive Fines Clause or the Cruel and Unusual Punishments Clause of the Eighth Amendment. This Court finds Warras's total punishment versus his actual punishment are the following:

| | |
|---|---|
| Congressional Maximum Imprisonment: | 245 years |
| U.S.S.G. Maximum Imprisonment: | 108 months |
| Actual Imprisonment: | 87 months to run concurrently with 60 months |
| Congressional Maximum Fine: | $51,400,000 |
| U.S.S.G. Maximum Fine: | $30,000,000 |
| Actual Fine: | $0 |
| Special Assessment | $1,300 |
| Forfeiture | $876,750 |
| Restitution | $6,475,000 |
| Statutory Maximum Supervised Release | Up to 3 years: PSR, p. 19 |
| U.S.S.G. Maximum Supervised Release | 3 years: PSR, p. 20, ¶133 |
| Actual Supervised Release | 3 years concurrent |

This Court finds Warras's 87-month sentence is well within the statutory 345 years sentence and is less than the Guideline 108 month sentence. This Court did not order a fine as part of his sentence though the statutory maximum fine was $71,598,900 and the Guideline maximum fine was $30,000,000. Warras's fraud with his coconspirators caused $10,399,725 damages (Ex. I, N). When this Court ordered restitution of $6,475,000 jointly and severally liable as to the defendants and the forfeiture order of $876,750, based on the fine of $71,598,900 or $30,000,000 that was not ordered, the restitution amount and the forfeiture amount combined is less than the fine. The restitution which is not punishment and the forfeiture added together

- 23 -

totals $7,351,750. When that amount is divided by the Congressional fine of $71,598,900

($7,351,750/$71,598,900 = .103), the amount is less than 11% of the fine. When the $7,351,750

is divided by the U.S.S.G. fine of $30,000,000 ($7,351,750/$30,000,000 = .245), the amount is

about 25% of the fine.

Since Warras's total punishment is much less than what this Court could have sentenced

him, his total punishment is not grossly disproportionate and does not violate the Excessive Fines

Clause or the Cruel and Unusual Punishments Clause of the Eighth Amendment. <u>Feldman</u>, 853

F.2d at 664; <u>Busher</u>, 817 F.2d 1409.

**H. Brandel's total punishment does not violate the Eighth Amendment.**

Since restitution is not punishment (<u>Davis</u>, 706 F.3d at 1084; <u>Newman</u>, 659 F.3d at 1241;

<u>Hunter</u>, 618 F.3d at 1064), the district court ordering the payment of restitution does not violate

the Excessive Fines Clause or Cruel and Unusual Punishments Clause of the Eight Amendment

because it is already inherently proportional and is inherently linked to the offender's culpability.

<u>Beecroft</u>, 825 F.3d at 997, *abrogated on other grounds*, <u>Honeycutt</u>, 137 S. Ct. at 1632 and 1635;

<u>Dubose</u>, 146 F.3d at 1147.

This Court finds Brandel's total punishment, including the forfeiture and the restitution,

is not grossly disproportionate and does not violate the Excessive Fines Clause or the Cruel and

Unusual Punishments Clause of the Eighth Amendment. This Court finds Brandel's total

punishment versus his actual punishment are the following.


| | |
|---|---|
| Congressional Maximum Imprisonment: | 345 years |
| U.S.S.G. Maximum Imprisonment: | 108 months |
| Actual Imprisonment: | 87 months to run concurrently with 60 months |
| Congressional Maximum Fine: | $81,598,900 |
| U.S.S.G. Maximum Fine: | $45,000,000 |
| Actual Fine: | $0 |
| Special Assessment: | $1,800: 18 U.S.C. § 3013 |
| Forfeiture: | $4,920,000 |

| | | |
|---|---|---|
| 1 | Restitution: | $6,475,000, Exhibit I |
| 2 | Congressional Maximum Supervised Release | Up to 3 years: PSR, p. 19 |
| 3 | U.S.S.G. Maximum Supervised Release | 3 years: PSR, p. 20, ¶133 |
| 4 | Actual Supervised Release | 3 years concurrent |

This Court finds Brandel's 87-month sentence is well within the statutory 345 years sentence and is less than the U.S.S.G. 108 month sentence. This Court did not order Brandel to pay a fine as part of his sentence though it could have been a Congressional maximum fine of $81,598,900 or U.S.S.G. maximum fine of $45,000,000. Brandel's fraud with his coconspirators caused $10,399,725 damages (Ex I, N). When this Court ordered restitution of $6,475,000 jointly and severally liable as to the defendants and the forfeiture order $4,920,000 as to Brandel, based on the fine of $81,598,900 or $45,000,000 that was not ordered, the restitution amount and the forfeiture amount combined is less than the fine. The restitution which is not punishment and the forfeiture added together totals $11,395,000.00. Since Brandel's total punishment is much less than to what this Court could have sentenced him, Brandel's total punishment is not grossly disproportionate and does not violate the Excessive Fines Clause or the Cruel and Unusual Punishments Clause of the Eighth Amendment. Feldman, 853 F.2d at 664.

**V. SUMMARY**

Accordingly, IT IS HEREBY ORDERED that the Government's Motions for Forfeiture and Restitution (#296/297/298/374) are **GRANTED per this order and the Minute Order (#368)**;

IT IS FURTHER ORDERED that the Government's Motion to Strike (#366) is **GRANTED**;

IT IS FURTHER ORDERED that Defendant Brandel's Motion to Adjust Restitution and Forfeiture (#371) is **DENIED**;

IT IS FURTHER ORDERED that the Government's Motion to Add GW's $100,000 to Restitution (#372) is **GRANTED**;

IT IS FURTHER ORDERED that the Government's Motion to Strike (#382) is **DENIED**;

IT IS FINALLY ORDERED that the Amended Judgment (#413) is **VACATED as improvidently entered as no Judgment had been entered, awaiting the present opinion and order on restitution and the final order of forfeiture**.[7]

## VI. CONCLUSION

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Anthony Brandel and James Warras pay restitution of $6,475,000.00 jointly and severally liable along with the other defendants convicted in this case;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the United States recover from James Warras the in personam criminal forfeiture money judgment of $876,750.00 pursuant to Fed. R. Crim. P. 32.2(b)(4)(A) and (B); 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c); and 21 U.S.C. § 853(p).

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the United States recover from Anthony Brandel the in personam criminal forfeiture money judgment of $4,920,000.00 pursuant to Fed. R. Crim. P. 32.2(b)(4)(A) and (B); 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c); and 21 U.S.C. § 853(p).

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Clerk send copies of this Order to all counsel of record and three certified copies to the United States Attorney's Office, Attention Asset Forfeiture Unit.

DATED: May 13, 2019.

KENT J. DAWSON
UNITED STATES DISTRICT JUDGE

---

[7] The parties agree that Defendants must be present per Federal Rule of Criminal Procedure 43 at sentencing. Accordingly, the Court will set a date and time for oral pronouncement of the order on restitution and final order of forfeiture. However, sentencing having been heard and the issue of restitution more than fully briefed, no further argument will be considered by the Court. Should either Defendant wish to sign a written waiver of appearance per Rule 43(c)(2), final judgment will be entered forthwith with the understanding, that unless withdrawn, Defendant Brandel will first receive a hearing on his motion to represent himself.

# EXHIBIT A

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 2:13-CR-439-KJD-(VCF) |
| | ) | |
| Plaintiff, | ) | Restitution Victims and the Amount owed |
| | ) | Each Victim |
| v. | ) | |
| | ) | |
| ANTHONY BRANDEL and | ) | |
| JAMES WARRAS, | ) | |
| | ) | |
| Defendants. | ) | |

Anthony Brandel and James Warras restitution payments will go to these victims for these

losses:

| VICTIMS | LOSS AMOUNT |
|---|---|
| GL | $ 225,000 |
| N&NA | $ 350,000 |
| JS | $ 300,000 |
| JH | $ 150,000 |
| EK | $ 430,000 |
| MB | $ 250,000 |
| GD | $ 200,000 |
| MK | $ 200,000 |
| TF | $1,000,000 |
| JA | $ 540,000 |
| WB | $ 330,000 |
| LB | $ 300,000 |
| DM | $ 400,000 |
| GW | $ 100,000 |
| JE | $ 500,000 |
| W&CG | $1,200,000 |
| Total | $6,475,000 |