AO 245B (Rev. 02/18)   Judgment in a Criminal Case
　　　　　　　　　　　Sheet 1

# UNITED STATES DISTRICT COURT

District of Nevada

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | |
| ANTHONY B. BRANDEL | Case Number:   2:13-cr-00439-KJD-VCF-1 |
| | USM Number:   48789-048 |
| | Anthony Brandel, Pro Se |
| | Defendant's Attorney |

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☑ was found guilty on count(s)   1, 3, 4, 6, 7, 9, 10, 11, 12, 13, 15, 16, 17, 18, 21, 22, 23, and 24 of the Indictment
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC § 371 | Conspiracy to Commit Wire Fraud and Securities Fraud | 12/12/2013 | 1 |
| 18 USC § 1343 | Wire Fraud | 12/12/2013 | 3-4, 6-7, 9-13 |
| 15 USC § 78J(b) 78ff, 17 C.F.R. § 240.10b-5 | Securities Fraud | 12/12/2013 | 15-18 & 21-24 |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☑ Count(s)   all remaining   ☐ is   ☑ are dismissed on the motion of the United States.

　　　　It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

6/4/2019
Date of Imposition of Judgment

_Signature of Judge_

KENT J. DAWSON, UNITED STATES DISTRICT JUDGE
Name and Title of Judge

6/6/2019
Date

AO 245B (Rev. 02/18)  Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page ___2___ of ___7___

DEFENDANT:  ANTHONY B. BRANDEL
CASE NUMBER:  2:13-cr-00439-KJD-VCF-1

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

60 Months, as to Count 1; 87 Months, as to all other counts, all counts to run concurrent.

☑ The court makes the following recommendations to the Bureau of Prisons:

The Court recommends the Defendant to be permitted to serve his term of incarceration in Tucson, AZ.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m. on _____ .

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page __3__ of __7__

DEFENDANT:  ANTHONY B. BRANDEL
CASE NUMBER:  2:13-cr-00439-KJD-VCF-1

# SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :  __3 years, per count, to run__

concurrent.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court, not to exceed 104 tests annually.
   ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
      Sheet 3A — Supervised Release

|  | Judgment—Page | 4 | of | 7 |
|---|---|---|---|---|

DEFENDANT:  ANTHONY B. BRANDEL
CASE NUMBER:  2:13-cr-00439-KJD-VCF-1

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature    _____     Date _____

AO 245B(Rev. 02/18)   Judgment in a Criminal Case
Sheet 3D — Supervised Release

Judgment—Page    5    of    7

DEFENDANT:  ANTHONY B. BRANDEL
CASE NUMBER:   2:13-cr-00439-KJD-VCF-1

# SPECIAL CONDITIONS OF SUPERVISION

1. Debt Obligations - You shall be prohibited from incurring new credit charges, opening additional lines of credit, or negotiating or consummating any financial contracts without the approval of the probation officer.

2. Access to Financial Information - You shall provide the probation officer access to any requested financial information, including personal income tax returns, authorization for release of credit information, and any other business financial information in which you have a control or interest.

3. Pay outstanding monetary restitution imposed by the court.

4. Victim-Witness Prohibition - You shall not have contact, directly or indirectly, with any victim or witness in this instant offense, unless under the supervision of the probation officer.

5. Warrantless Search - To ensure compliance with all conditions of release, the defendant shall submit to the search of his/her person, and any property, residence, business or automobile under his/her control by the probation officer, or any other authorized person under the immediate and personal supervision of the probation officer without a search warrant at a reasonable time and in a reasonable manner. Provided, however, the defendant shall be required to submit to any search only if the probation officer has reasonable suspicion to believe the defendant has violated a condition or conditions of release.

6. Possession of Weapons - You shall not possess, have under your control, or have access to any firearm, explosive device, or other dangerous weapons, as defined by federal, state, or local law.

7. Report to Probation Officer After Release from Custody - You shall report, in person, to the probation office in the district to which you are released within 72 hours of discharge from custody.

Note: A written statement of the conditions of release was provided to the Defendant by the Probation Officer in open court at the time of sentencing.

AO 245B  (Rev. 02/18)   Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page  6  of  7

DEFENDANT: ANTHONY B. BRANDEL
CASE NUMBER:  2:13-cr-00439-KJD-VCF-1

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| **TOTALS** | $ 1,800.00 | $ | $ | $ 6,475,000.00 |

☐  The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Order attached | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| TOTALS | $ _____ | $_____ | |
|---|---|---|---|

☐  Restitution amount ordered pursuant to plea agreement  $  _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐  the interest requirement is waived for the     ☐  fine    ☐  restitution.

☐  the interest requirement for the     ☐  fine    ☐  restitution is modified as follows:

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 02/18) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page __7__ of __7__

DEFENDANT:  ANTHONY B. BRANDEL
CASE NUMBER:  2:13-cr-00439-KJD-VCF-1

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☑  Lump sum payment of $ ___6,476,800.00___  due immediately, balance due

      ☐  not later than _____ , or
      ☑  in accordance with  ☐  C,  ☐  D,  ☐  E, or  ☑  F below; or

B  ☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

C  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
      _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
      _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
      term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
      imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☑  Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount,
    and corresponding payee, if appropriate.
    James Warras        2:13-cr-00439-KJD-VCF

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☑  The defendant shall forfeit the defendant's interest in the following property to the United States:
    See attached order.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

1

2

3

4                        UNITED STATES DISTRICT COURT

5                              DISTRICT OF NEVADA

6                                     * * *

7   UNITED STATES OF AMERICA,                 Case No. 2:13-cr-439-KJD-VCF

8                           Plaintiff,        OPINION, ORDER on RESTITUTION and
                                                     FINAL ORDER of FORFEITURE
9         v.

10  ANTHONY BRANDEL and JAMES
    WARRAS,
11
                            Defendants.
12

13

14          Presently before the Court is the Government's Motion for Forfeiture as to James Warras

15  (#296). Defendant Warras filed a response in opposition (#311) to which the Government replied

16  (#322). Also before the Court is the Government's Motion for Forfeiture as to Anthony Brandel

17  (#298). Defendant Brandel filed a response in opposition (#314) to which the Government

18  replied (#323). Also before the Court is the Government's Motion in Support of Restitution

19  (#297). Defendant Warras filed a response in opposition (#312) as did Defendant Brandel (#315)

20  to which the Government replied (#321).[1]  Defendant Brandel filed a Supplemental Response

21  (#365) to the Government's motions which the Government replied to (#367).

22          The Government also moved to Strike Government's Statement in Closing Argument

23  Based on a Mathematical Miscalculation of Exhibit K (#366).

24          Also before the Court is Defendant Brandel's late filed Motion to Adjust Restitution and

25  ───────────────────

26          [1] After the January 16, 2018 hearing on restitution and forfeiture, the Court entered a minute order (#368)
    which granted the motions for forfeiture and restitution. Further, the Court disposed of the Supplemental Response
27  (#365) of Brandel, wherein he essentially argued that he should not only not be liable for restitution or forfeiture but
    that he was actually innocent of the charges for which he was convicted. However, the Court denied the Supplement
28  at the hearing as untimely and then denied it by minute order on the merits. Further, the Court had previously granted
    a motion in limine by the Government which forbade the Defendants from re-arguing their actual innocence at the
    restitution and forfeiture hearing.

Forfeiture (#371). The Government filed a response in opposition (#373).

Also before the Court is the Government's Motion to Add GW's Loss to Restitution and to Replace EG with JE, as the actual victim of the monetary loss (#372). Defendant James Warras filed a response in opposition (#375) to which the Government replied (#376/379). Defendant Brandel filed a late opposition (#381).[2] The Government also filed a Motion for Entry of Opinion, Restitution Order and Final Order of Forfeiture (#374). Defendant Warras filed a response in opposition (#377) to which the Government replied (#378/380).

## I. PROCEDURAL HISTORY and FACTUAL FINDINGS

A jury found Anthony Brandel guilty of Counts 1, 3, 4, 6, 7, 9-13, 15-18, 21-24 of the Indictment, and Defendant James Warras guilty of Counts 1, 3-5, 11-13, 15-17, 19, and 23-24 of the Indictment. See Minutes of Jury Trial, ECF No. 208; Jury Verdict, ECF No. 215. The Court found that Anthony Brandel shall pay the *in personam* criminal forfeiture money judgment of $4,920,000 pursuant to Fed. R. Crim. P. 32.2(b)(1) and (2); Title 18, United States Code, Section 981(a)(1)(C) with Title 28, United States Code, Section 2461(c); and Title 21, United States Code, Section 853(p). Indictment, ECF No. 1; Minutes of Jury Trial, ECF No. 208; Jury Verdict, ECF No. 215; Amended Preliminary Order of Forfeiture, ECF No. 237. The Court found that James Warras shall pay the *in personam* criminal forfeiture money judgment of $4,920,000 pursuant to Fed. R. Crim. P. 32.2(b)(1) and (2); Title 18, United States Code, Section 981(a)(1)(C) with Title 28, United States Code, Section 2461(c); and Title 21, United States Code, Section 853(p). Indictment, ECF No. 1; Minutes of Jury Trial, ECF No. 208; Jury Verdict, ECF No. 215; Preliminary Order of Forfeiture, ECF No. 276.

On January 16, 2018, the Court held the evidentiary hearing and oral argument for the sentencing on restitution and forfeiture, with testimony from Federal Bureau of Investigation (FBI) Special Agent Gene Tierney and FBI Forensic Account Gary Daniel Marsh and admitted exhibits that the Court found relevant and reliable (ECF Nos. 368, 369). The Court finds the rules of evidence do not apply and relevant and reliable hearsay can be used in restitution and forfeiture. See U.S. Sentencing Guidelines (U.S.S.G.) § 6A1.3(a); Fed. R. Crim. P.

---

[2] The Government filed a Motion to Strike (#382/383) Brandel's late opposition.

1   32.2(b)(1)(B); United States v. Newman, 659 F.3d 1235, 1245 (9th Cir. 2011), *cert. denied*, 566

2   U.S. 915 (2012), *abrogated on other grounds,* Honeycutt v. United States, 137 S. Ct. 1626, 1632

3   and 1635 (2017); United States v. Huckins, 53 F.3d 276, 279 (9th Cir. 1995); United States v.

4   Petty, 982 F.2d 1365, 1369 (9th Cir.), *amended*, 992 F.2d 1015 (9th Cir. 1993); United States v.

5   Riley, 143 F.3d 1289, 1292 (9th Cir. 1998); United States v. Grice, 319 F.3d 1174, 1178-79 (9th

6   Cir.); United States v. Brock-Davis, 504 F.3d 991, 999 (9th Cir. 2007); In re Her Majesty the

7   Queen in Right of Canada, 785 F.3d 1273, 1276 (9th Cir. 2015).

8          The Court finds the guilt phase of the government's witnesses' testimonies and the trial

9   admitted exhibits are relevant and reliable. The Court finds the sentencing witnesses and exhibits

10   are relevant and reliable evidence: A, A-1, A-1-a, A-1-b, A-1-c, A-1-d, A-1-e, A-1-f, A-1-g, A-

11   1-h, B, C, C-1, D, D-2, E, E-1, E-2, F, F-1, F-2, F-3, F-4, F-4-a, F-4-b, F-4-c, F-4-d, F-4-e, F-4-f,

12   F-5, F-6, F-7, G, G-1, G-2, G-2-a, G-2-b, G-2-c, G-2-d, G-2-e, G-2-f, G-2-g, G-2-h, G-7, G-7-a,

13   G-7-b, H, H-1, H-1-a, H-1-b, H-1-c, H-1-d, H-1-e, H-1-f, H-1-g, H-1-h, 801, 802, 803, 805, I, J,

14   K, M, and N. The Court finds the statements of the SEC attorneys explaining how they obtained

15   the information, made the exhibits, and only Brandel's statements that are against his interest in

16   Ex. M are relevant and reliable evidence.

17   **II RESTITUTION**

18          **A. The victims' actual losses are $6,475,000 under the Mandatory Victim Restitution**

19          **Act.**

20          The Court finds the following are victims with actual losses of Brandel's and Warras's

21   wire fraud scheme and conspiracy to commit wire fraud: GL lost $225,000, N&NA lost

22   $350,000, JS lost $300,000, JH lost $150,000, EK lost $430,000, MB lost $250,000, GD lost

23   $200,000, MK lost $200,000, TF lost $1,000,000, JA lost $540,000, WB lost $330,000, LB lost

24   $300,000, DM lost $400,000, JE lost $500,000, W&CG lost $1,200,000, and GW lost $100,000

25   because of Brandel's and Warras's criminally convicted conduct. The located victims' actual

26   loss is $6,475,000.[3] Admitted exhibits at trial and at sentencing and testimony at trial and

---

[3] This dollar amount is based on GW's loss of $100,000. Having read and considered the Government's
Motion to Add GW's Loss to Restitution and to Replace EG with JE, as the actual victim of the monetary loss (#372)
and the oppositions and replies, the Court finds that a preponderance of the evidence supports the Government's

1  sentencing.

2  **B. The Mandatory Victim Restitution Act applies to this case.**

3       The Mandatory Victim Restitution Act ("MVRA") requires a restitution order at

4  sentencing where defendants' criminal conduct caused the victims' losses, including offenses

5  committed by fraud or deceit. <u>See</u> 18 U.S.C. §§ 3663A(a)(1) and (c)(1)(A)(ii) and 3664(e) and

6  (f)(1)(A); <u>United States v. Lo</u>, 839 F.3d 777, 788-789 (9th Cir. 2016); <u>United States v. Eyraud,</u>

7  809 F.3d 462, 467 and 469 (9th Cir. 2015); <u>United States v. Hymas</u>, 780 F.3d 1285, 1293 n.4

8  (9th Cir. 2015); <u>United States v. Hunter</u>, 618 F.3d 1062, 1064 (9th Cir. 2010); <u>United States v.</u>

9  <u>Gossi</u>, 608 F.3d 574, 578-79 (9th Cir. 2010); <u>United States v. Peterson</u>, 538 F.3d 1064, 1074-75

10 (9th Cir. 2008); <u>United States v. De La Fuente</u>, 353 F.3d 766, 769 (9th Cir. 2003). The Court

11 finds that since the jury found Brandel and Warras committed a scheme of wire fraud and

12 securities fraud and a conspiracy to commit a scheme of wire fraud and securities fraud, the

13 MVRA requires the Court order restitution to the victims.

14       **1. The Defendants are jointly and severally liable for restitution of $6,475,000.**

15       The Court must impose the full amount of restitution for the identifiable victims'

16 losses without consideration of the defendant's economic circumstances (18 U.S.C. §

17 3664(f)(1)(A)), or when more than one defendant contributed to the victims' losses, may

18 apportion the restitution amounts among the defendants to reflect their level of contribution to

19 the victims' losses and the economic circumstances of each defendant (18 U.S.C. § 3664(h)), and

20 has discretion to decide the monthly payment towards the restitution (18 U.S.C. § 3664(f)(3)(B)).

21 <u>See</u> 18 U.S.C. § 3664(f)(1)(A), (f)(3)(B), and (h); <u>United States v. Hankins</u>, 858 F.3d 1273, 1276

22 (9th Cir. 2017); <u>Grice</u>, 319 F.3d at 1177; <u>United States v. Matsumaru</u>, 244 F.3d 1092, 1108-09

23 (9th Cir. 2001); <u>United States v. Dubose</u>, 146 F.3d 1141, 1148 (9th Cir. 1998), *as amended on*

24 *denial of reh'g* (Aug. 31, 1998); <u>United States v. Hymas</u>, 582 F. App'x, 770, 770-71 (9th Cir.

25 2014); <u>United States v. Reed</u>, 84 F. App'x 983, 987 (9th Cir. 2004).

26       When the Court asked the defendants if they wanted apportionment at sentencing

27 regarding restitution, they wanted joint and several liability rejecting apportionment. Even if the

28

motion and the motion is **GRANTED**.

- 4 -

1    defendants were to request apportionment, and it certainly appears that Warras has requested

2    apportionment, the Court has discretion to apportion the restitution amounts or not to apportion

3    and to order joint and several liability. 18 U.S.C. § 3664(h); United States v. Booth, 309 F.3d

4    566, 575-76 (9th Cir. 2002); Hymas, 582 F. App'x at 770-71.

5            The Court may deny apportionment when the defendants are blameworthy

6    regarding their convicted crimes, play essential roles in the scheme to commit wire fraud and

7    securities fraud and conspiracy to commit such scheme of fraud, have culpability, and are

8    partially responsible for the victims' losses. Id. The Court may also deny apportionment because

9    restitution is to make the victims whole, not punish the defendants. Hymas, 582 F. App'x at 771;

10   Newman, 659 F.3d at 1241, *abrogated on other grounds*, Honeycutt, 137 S. Ct. at 1632 and

11   1635; Hunter, 618 F.3d at 1064. The Court finds the defendants are jointly and severally liable

12   for restitution of $6,475,000.

13           **2. Preponderance of the Evidence is the Standard of Proof for Restitution**.

14           "The standard of proof for restitution proceedings is preponderance of the

15   evidence as opposed to the standard of clear and convincing evidence required of a sentencing

16   enhancement with a disproportionate impact." Hymas, 780 F.3d at 1293 n.4; 18 U.S.C. §§

17   3663A(a)(1) and (c)(1)(A)(ii) and 3664(e) and (f)(1)(A); In re Her Majesty the Queen in Right of

18   Canada, 785 F.3d at 1276; Peterson, 538 F.3d at 1075. The Court finds that the government has

19   met its burden of proof as to the amount of loss sustained by the victims and the Court finds by a

20   preponderance of the evidence that restitution should be ordered, jointly and severally, against

21   defendants.

22           **3. The victims are defined under the MVRA.**

23           Under the MVRA, a victim is (1) "a person" directly and proximately harmed as a

24   result of the commission of an offense for which restitution may be ordered; or (2) in the case of

25   an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any

26   person directly harmed by the defendants' conduct in the course of the scheme, conspiracy, or

27   pattern. 18 U.S.C. § 3663A(a)(2); see Lo, 839 F.3d at 788; Gossi, 608 F.3d at 579; Peterson, 538

28   F.3d at 1074; De La Fuente, 353 F. 3d at 771-772. Under the MVRA, the definition of a person

1   includes an entity. See Gossi, 608 F.3d at 576-579; De La Fuente, 353 F.3d at 769.

2     The Court finds the victims in this case were directly and proximately harmed

3   because Brandel's and Warras's offenses involved a scheme to commit wire fraud and securities

4   fraud and a conspiracy to commit a scheme of wire fraud and securities fraud. This Court finds

5   that whether the money came from a person or his or her corporation in this case, they were still

6   victims under the MVRA.

7     **4. Defendants' fraudulent statements are the causation of the victims' loss.**

8     Defendants' fraudulent statements caused the victims' loss. See Peterson, 538

9   F.3d at 1075. This is true even when the statements were not the sole factor in causing the

10  victims' loss. Id. (citing United States v. Spicer, 57 F.3d 1152, 1159 (D.C. Cir. 1995)); De la

11  Fuente, 353 F. 3d at 774-75; United States v. Hackett, 311 F.3d 989, 992-93 (9th Cir. 2002).  It is

12  likely in this case that Defendants' fraud was the sole factor, but even if it was not, the victims

13  were unlikely to have invested their money had they known the true financial standing of the

14  "Malom Group". The Court finds the defendants made numerous fraudulent statements to the

15  victims in this case to further their scheme to commit wire fraud and securities fraud and their

16  conspiracy to commit a scheme of wire fraud and securities fraud. This Court finds Brandel's

17  and Warras's fraudulent statements were the causation of the victims' losses.

18    **5. Restitution includes victims' losses not included in counts of the indictment**

19    **where the defendants committed crimes that include a scheme, a conspiracy,**

20    **or a pattern, which are closely related to them.**

21    Where defendants are "convicted of crimes that require proof of a scheme,

22  conspiracy, or pattern of criminal activity . . . restitution may be ordered for all persons directly

23  harmed by the entire scheme. Such restitution is not limited to harm caused by the particular

24  counts of conviction. In this context, a restitution order may be based on related but uncharged

25  conduct that is part of a fraud scheme." In re Her Majesty the Queen in Right of Canada, 785

26  F.3d at 1276; see Lo, 839 F.3d at 788; Brock-Davis, 504 F.3d at 999; Grice, 319 F.3d at 1177-79.

27    The Court finds that since Brandel and Warras are guilty of a scheme to commit

28  wire fraud and securities fraud and a conspiracy to commit a scheme of such, the Court may

1   order restitution for all victims directly harmed by the entire scheme, including those not in

2   counts of conviction. This Court finds the government proved by preponderance of the evidence

3   the victims were directly harmed by the entire scheme and conspiracy in which Brandel and

4   Warras participated extensively and were convicted.

5          The harm to the victim must be closely related to the scheme or conspiracy, rather

6   than tangentially linked. See Riley, 143 F.3d at 1292. The Court finds the harm to the victims

7   who were not included in the indictment are closely related to defendants' scheme and

8   conspiracy with the victims who were in the indictment. The Court finds by a preponderance of

9   the evidence: (1) the victims in the guilt phase and the additional victims at sentencing are

10  victims as defined in the MVRA; (2) Anthony Brandel and James Warras caused the direct and

11  proximate harm to the victims; (3) under the scheme and conspiracy, Anthony Brandel and

12  James Warras caused the direct harm to the victims; (4) Anthony Brandel and James Warras

13  were the causation of the victims' losses through their fraudulent statements; and (5) Anthony

14  Brandel's and James Warras's crimes against the victims that were not in the indictment are

15  closely related to the conduct Anthony Brandel and James Warras committed against the victims

16  who were named in the indictment and finds by preponderance of the evidence that: (a) the joint

17  venture agreements with Malom Group AG or NAS were alike, (b) the escrow agreements were

18  alike, (c) the fraudulent bank statements were alike, (d) Anthony Brandel and James Warras

19  criminal conduct were alike, (e) the flow the victims' money from their accounts to escrow

20  accounts and from the escrow accounts to the same criminals, including Anthony Brandel and

21  James Warras, were alike, (f) Anthony Brandel's and James Warras's scheme and artifice to

22  defraud were alike, (g) Brandel's and Warras's conspiracy were alike, (h) Anthony Brandel's

23  and James Warras's criminal pattern were alike, (i) Anthony Brandel's and James Warras's

24  causation were alike, (j) Anthony Brandel's and James Warras's modus operandi were alike, (k)

25  Anthony Brandel's and James Warras's direct harm were alike, (k) Anthony Brandel's and

26  James Warras's direct and proximate harm were alike, (l) the time periods were alike, (m) the

27  removal of the money in escrow by distributing it to the defendants without approved financial

28  transactions were alike, and (n) Anthony Brandel's and James Warras's lulling the victims with

the fraudulent statements that the money would be returned were alike.  <u>See</u> Admitted exhibits at trial and at sentencing; testimony at trial and sentencing; <u>see Lo</u>, 839 F.3d at 788-789; <u>Eyraud</u>, 809 F.3d at 467 and 469; <u>In re Her Majesty the Queen in Right of Canada,</u> 785 F.3d at 1276; <u>Hymas</u>, 780 F.3d at 1293 n.4; <u>Hunter</u>, 618 F.3d at 1064; <u>Gossi</u>, 608 F.3d at 578-79; <u>Peterson</u>, 538 F.3d at 1074-75; <u>Brock-Davis</u>, 504 F.3d at 999; <u>United States v. Decoud</u>, 456 F.3d 996, 1015 (9th Cir. 2006); <u>De La Fuente</u>, 353 F. 3d at 769; <u>Grice</u>, 319 F.3d at 1177-79; <u>Hackett</u>, 311 F.3d at 992-93; <u>United States v. Montgomery</u>, 150 F.3d 983, 999 (9th Cir. 1998); <u>United States v. Kostoff</u>, 585 F.2d 378, 380 (9th Cir. 1978).

For these reasons, the Court finds the Government proved by preponderance of the evidence the multiple links of the victims' money to the defendants is a causal chain, and no intervening cause existed regarding the fraudulently obtained money from the victims to the defendants. <u>See</u> <u>Id</u>.

"The government need not show direct contact or explicit agreement between the defendants. It is sufficient to show that each defendant knew or had reason to know of the scope of the conspiracy and that each defendant had reason to believe that his own benefits were dependent on the success of the entire venture." <u>Montgomery</u>, 150 F.3d at 999 (citation and brackets omitted) (quoting <u>Kostoff</u>, 585 F.2d at 380). When the defendants' criminal activities were "not limited to a single transaction", and the defendants "played a variety of roles" in the organization, they are liable for the entire conspiracy. <u>See</u> <u>Decoud</u>, 456 F.3d at 1015.

The Court finds the admitted evidence at trial and sentencing and the testimony at trial and sentencing proved by preponderance of the evidence that Brandel and Warras were part of the conspiracy and the scheme to defraud; knew the scope of the conspiracy and the scheme to defraud; knew they were dependent on the success of the entire scheme and conspiracy to receive their benefits, the proceeds of the fraudulently obtained money; were involved in numerous transactions; and played a variety of roles in the conspiracy.

1   The Court finds, pursuant to 18 U.S.C. §§ 3663A and 3664, Brandel should pay

2   restitution of $6,475,000 and Warras should pay restitution of $6,475,000 to the victims, jointly

3   and severally liable with each other and with any other convicted codefendants.[4]

4   ## III. FORFEITURE

5   ### A. The forfeiture statutes in the indictment authorize criminal forfeiture money

6   ### judgments.

7   18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(p), the forfeiture

8   statutes alleged in the forfeiture allegation of the Indictment (#1), support criminal forfeiture

9   money judgments. See Newman, 659 F.3d at 1242; United States v. Casey, 444 F.3d 1071, 1076

10  (9th Cir. 2006); Phillips, 704 F.3d at 771; Fed. R. Crim. P. 32.2(b)(1); 28 U.S.C. § 2461(c); Fed.

11  R. Crim. P. 32.2(e); 21 U.S.C. § 853(p); Honeycutt, 137 S. Ct. at 1633-34; Lo, 839 F.3d at 780,

12  782-783, 790-792.  The Court finds Defendants' crimes of which they were convicted have

13  forfeiture statutes that authorize criminal forfeiture money judgments.

14  ### B. The illegal proceeds of defendants' scheme and conspiracy are the gross

15  ### proceeds.

16  The Court finds illegal proceeds are total gross proceeds obtained, acquired, or possessed

17  with dominion and control in a scheme of fraud and a conspiracy to commit a scheme of such

18  fraud. See 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c); Honeycutt, 137 S. Ct. at 1632;

19  United States v. Christensen, 828 F.3d 763, 822-24 (9th Cir. 2016); Newman, 659 F.3d at 1243;

20  Casey, 444 F.3d at 1073-74, 1076; Lo, 839 F.3d at 792-794.  The Court finds the gross proceeds

21  of this scheme to commit wire fraud and securities fraud and conspiracy to commit such scheme

22  are $10,399,725. Admitted exhibits and testimony at trial and sentencing, including, but not

23  limited to, Ex. I, N.

24  The Government argued that the Court should order a criminal forfeiture money

25  judgment of $4,920,000.00 based on an agreement between DOJ attorney Young and Mr. Smith,

26  Anthony Brandel's attorney. Anthony Brandel denied he authorized his counsel to make the deal

27

28  [4] The Court finds that there is no constitutional or statutory right to a jury determination on restitution or restitution amounts. See Green, 722 F.3d 1146, 1151 (9th Cir. 2013); Dubose, 146 F.3d at 1148; 18 U.S.C. §§ 3663, 3663A, 3563(a)(2),(b)(2), 3583(d).

1   (ECF No. 371, p. 1-2). Based on Anthony Brandel's statement that he never authorized the deal,[5]

2   the Court finds Brandel obtained, acquired, and possessed with dominion and control $8,849,725

3   of the fraudulently obtained illegal proceeds through Commercial Escrow Services ("CES") and

4   $100,000 through MY Consultants as to B&CG. Exhibits N and K; admitted exhibits and

5   testimony at trial and sentencing. Brandel dictated to Toni Hardstone of CES when and to whom

6   the $8,849,725 went before the Joint Venture Agreement authorized such and even without

7   signed escrow instructions. Exhibit N; admitted exhibits and testimony at trial and sentencing.

8   Brandel determined when and to whom the fraudulently obtained illegal proceeds went from MY

9   Consultants, including the $100,000 through MY Consultants as to B&CG. Exhibits N, K, and

10  M; admitted exhibits and testimony at trial and sentencing.

11       The Court finds the government proved by a preponderance of the evidence per

12  Honeycutt that Brandel obtained, acquired, or possessed with dominion and control $8,949,725

13  from the scheme to commit wire fraud and securities fraud and conspiracy to commit a scheme

14  of such fraud. However, the Court accepts the admission by the United States that they were

15  limited to seeking a criminal forfeiture money judgment of $4,920,000.00. The Court orders

16  Brandel to pay a criminal forfeiture money judgment of $4,920,000.00. Admitted exhibits and

17  testimony at trial and sentencing, including, but not limited to, Ex. J, K, M, N.

18       In the Preliminary Order of Forfeiture, the government moved and the Court ordered

19  Warras to pay a criminal forfeiture money judgment of $4,920,000 pursuant to Fed. R. Crim. P.

20  32.2(b)(1) and (2); 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c); and 21 U.S.C. § 853(p).

21  However, the government then moved to lower Warras's criminal forfeiture money judgment to

22  $876,750 to reflect the holding in Honeycutt.

23       The Court finds the government proved by preponderance of the evidence per Honeycutt

24  that Warras obtained, acquired, or possessed with dominion and control $876,750 from the

25

26  [5] In Anthony Brandel's latest Motion to Adjust Restitution and Forfeiture (#371), he declared he did not
    authorize his attorney, Mr. Smith, to obtain a better deal for Anthony Brandel regarding the criminal forfeiture money

27  judgment of $4,920,000 (ECF No. 371, p. 1-2). To protect his rights, the government requested in its Response (ECF
    No. 373) to order the criminal forfeiture money judgment of $8,949,725. However, the Court had already ruled upon
    forfeiture two weeks prior to Brandel's Motion to Adjust ordering forfeiture against Brandel in the amount of

28  $4,920,000.00. Therefore, the Court finds that though the adduced evidence could support a criminal forfeiture money
    judgment of $8,4949,725.00, the issue was moot before Brandel filed the Motion to Adjust.

scheme to commit wire fraud and securities fraud and conspiracy to commit such a scheme.

Admitted exhibits and testimony at trial and sentencing, including, but not limited to, Ex. J, K,

M, N. This Court orders Warras to pay a criminal forfeiture money judgment of $876,750.[6]

**C. Ordering forfeiture and restitution does not violate the Double Jeopardy Clause of the Fifth Amendment and does not create an improper double recovery.**

The Court finds ordering forfeiture and restitution at sentencing does not violate the

Double Jeopardy Clause of the Fifth Amendment. See Monge v. California, 524 U.S. 721, 728

(1998); Hudson v. United States, 522 U.S. 93, 98 (1997). The Double Jeopardy Clause "protects

only against the imposition of multiple *criminal* punishments for the same offense, and then only

when such occurs in successive proceedings." Hudson, 522 U.S. at 99; see United States v.

Hickey, 367 F.3d 888, 892 (9th Cir. 2004), *opinion amended on denial of reh'g*, 400 F3d. 658

(9th Cir. 2005).

The Court finds defendants' argument that multiple financial penalties for the same crime

at sentencing violates double jeopardy is not supported by law. In every criminal case this Court

may or must, depending on the statutes, sentence the defendant with a fine, a special mandatory

assessment, the cost of imprisonment, the cost of residential re-entry center, the cost of

supervised release, restitution, and forfeiture (see, e.g., 18 U.S.C. §§ 982, 981 with 28 U.S.C. §

2461(c), 1963, 3013, 3554, 3556, 3571, 3572, 3574, 3611, 3663, 3663A, and 3664; U.S.S.G. §§

5E1.1, 5E1.2, and 5E1.2(d)(7); and 21 U.S.C. §§ 853 and 881 with 28 U.S.C. § 2461(c)) in

addition to imprisonment, supervised release, or probation). The Court finds double jeopardy is

not violated in this case because the Court orders restitution, the forfeiture, and the other

financial obligations at sentencing and no successive proceedings occur.

Restitution and forfeiture are separate and distinct, serving completely different purposes.

Restitution makes the victim whole again. See Newman, 659 F.3d at 1241-42; Hunter, 618 F.3d

at 1064; United States v. Davis, 706 F.3d 1081, 1082-84 (9th Cir. 2013). Davis rejected the

---

[6] The Court finds that no constitutional right exists for a jury determination of criminal forfeitures. See Libretti v. United States, 516 U.S. 29, 49 (1994); Christensen, 828 F.3d at 821-22; Phillips, 704 F.3d at 769-71. Additionally, the Court finds no statutory right exists for a jury to decide criminal forfeiture money judgments. See Fed. R. Crim. P. 32.2(b)(1)(A) and (B), (b)(2)(A), and (b)(5)(A) and (B); Christensen, 828 F. 3d at 822; Phillips, 704 F.3d at 771; Newman, 659 F.3d at 1242 -43.

1    double recovery argument for forfeiture and restitution since they serve different purposes. See

2    Id.; United States v. Boulware, 384 F.3d 794, 813 (9th Cir. 2004); United States v. Bright, 353

3    F.3d 1114, 1125 (9th Cir. 2004); United States v. Feldman, 853 F.2d 648, 663–64 (9th Cir.

4    1988).  Similarly, the Second, Fifth, Sixth, Seventh, Tenth, and Eleventh Circuits have rejected

5    the argument that ordering forfeiture and restitution violates Double Jeopardy. See United States

6    v. Peters, 732 F.3d 93, 100 (2d Cir. 2013); United States v. Kalish, 626 F.3d 165, 169 (2d Cir.

7    2010); United States v. Taylor, 582 F.3d 558, 565–66 (5th Cir. 2009); United States v. Corrado,

8    227 F.3d 543, 549-551 (6th Cir. 2000); United States v. Venturella, 585 F.3d 1013, 1019-20 (7th

9    Cir. 2009), cert. denied, 559 U.S. 955 (2010).

10   **IV. EIGHTH AMENDMENT**

11        **A. Under the Law-of-the-Circuit, *Bajakajian* does not undercut the
         theory, the reasoning, and the facts of the Ninth Circuit case law that
12       holds illegal proceeds do not violate the Eighth Amendment, and
         *Bajakajian* is NOT clearly irreconcilable with them.**
13

14        The law-of-the-circuit rule states, "a published decision of this court constitutes binding

15   authority which 'must be followed unless and until overruled by a body competent to do so.' "

16   Gonzalez v. Arizona, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc) (quoting Hart v.

17   Massanari, 266 F.3d 1155, 1170 (9th Cir. 2001); see Hart, 266 F.3d at 1170-74; Ross Island Sand

18   & Gravel v. Matson, 226 F.3d 1015, 1018 (9th Cir. 2000). Exceptions exist to the law-of-the-

19   circuit rule. Where a case of the United States Supreme Court "undercut[s] the theory or

20   reasoning underlying the prior circuit precedent in such a way that the cases are clearly

21   irreconcilable, then a three-judge panel of this court and district courts should consider

22   themselves bound by the intervening higher authority and reject the prior opinion of this court as

23   having been effectively overruled". Gonzalez, 677 F.3d at 389 n.4 (quoting Miller v. Gammie,

24   335 F.3d 889, 900 (9th Cir. 2003) (en banc)). Additionally, a high standard must be overcome to

25   invoke this higher authority exception. Lair v. Bullock, 697 F.3d 1200, 1207 (9th Cir. 2012)

26   (quoting United States v. Delgado–Ramos, 635 F.3d 1237, 1239 (9th Cir. 2011)).

27        This Court finds this higher authority exception to law-of-the-circuit does not apply

28   because United States v. Bajakajian, 524 U.S. 321, 330 n.5 (1998) does not undercut the theory,

the reasoning, and the facts underlying <u>United States v. Feldman</u>, 853 F.2d 648 (9th Cir. 1988),

<u>United States v. Real Property located at 22 Santa Barbara Drive</u>, 264 F.3d 860 (9th Cir. 2001),

and <u>United States v. Guillen-Cervantes</u>, 566 F. App'x 576 (9th Cir. 2014), and <u>Bajakajian</u> is **not**

clearly irreconcilable with them. The Ninth Circuit three-judge panels in <u>United States v. 3814</u>

<u>NW Thurman Street</u>, 164 F.3d 1191 (9th Cir. 1999), <u>United States v. Beecroft</u>, 825 F.3d 991 (9th

Cir. 2016), *abrogated on other grounds*, <u>Honeycutt</u>, 137 S. Ct. at 1632 and 1635, and <u>United</u>

<u>States v. Mosley</u>, 652 F. App'x 511 (9th Cir. 2016) did not perform, and failed to meet, this high

standard to invoke this higher authority exception to the law-of-the-circuit to reject the three-

judge panel decisions of <u>Feldman</u>, <u>22 Santa Barbara</u>, and <u>Guillen-Cervantes</u> that illegal proceeds

are not grossly disproportionate with <u>Bajakajian's</u> reasoning, theory, and facts.

First, <u>Bajakajian</u> did not "undercut the theory or reasoning underlying" <u>Feldman</u>, *22*

<u>Santa Barbara Drive</u>, and <u>Guillen-Cervantes</u> and was **not** "clearly irreconcilable with" <u>Feldman</u>,

<u>22 Santa Barbara</u>, and <u>Guillen-Cervantes</u>. These cases decided illegal proceeds forfeitures where

<u>Bajakajian</u> decided a reporting violation forfeiture that was not an instrumentality, was not

facilitating property, was legal proceeds, and was a legal livelihood.

Second, the <u>Bajakajian's</u> facts, theory, and reasoning are very different than <u>Feldman's</u>,

<u>22 Santa Barbara's</u>, and <u>Guillen-Cervantes's</u> facts, theory, and reasoning regarding the Eighth

Amendment.

Third, it is "far from clear" that a reporting violation forfeiture, non-instrumentality, non-

facilitating property, legal proceeds, and a legal livelihood case, which is punishment under the

Eighth Amendment, would apply to an illegal proceeds case.

Fourth, illegal proceeds forfeitures are "not clearly punishment" since the defendants do

not own the property (see <u>United States v. $4,224,958.57</u>, 392 F.3d 1002, 1004 (9th Cir. 2004);

<u>Caplin & Drysdale, Chartered v. United States</u>, 491 U.S. 617, 626 (1989); <u>United States v.</u>

<u>Hooper</u>, 229 F.3d 818, 821 22 (9th Cir. 2000)). It is not the defendant's legal livelihood, it is not

the defendant's legal proceeds, it is not a facilitating property, and it is not an instrumentality.

Since the three-judge panels of <u>Thurman</u>, <u>Beecroft</u>, and <u>Mosley</u> did not perform this

required law of-the-circuit analysis on <u>Feldman</u>, <u>22 Santa Barbara</u>, and <u>Guillen-Cervantes</u>, the

law-of-the-circuit higher authority exception does not apply to <u>Feldman</u>, <u>22 Santa Barbara</u>, and <u>Guillen-Cervantes</u>. <u>See</u> <u>Hart</u>, 266 F.3d at 1170-71; <u>Green</u>, 722 F.3d at 1149-51; <u>Miller</u>, 335 F.3d at 893 and 899-900. Even if the three-judge panels had performed the law of-the-circuit analysis, <u>Bajakajian</u> did not undercut the theory, reasoning, and facts underlying <u>Feldman</u>, <u>22 Santa Barbara</u>, and <u>Guillen-Cervantes</u> and was not clearly irreconcilable. <u>See Green</u>, 722 F.3d at 1149-51; <u>Miller</u>, 335 F.3d at 893 and 899-900.

The law-of-the-circuit rule "binds all courts within a particular circuit, including the court of appeals itself[]" unless overruled in an en banc review. <u>See</u> <u>Hart</u>, 266 F.3d at 1170-71 (brackets added). The three-judge panels failed to request en banc reviews as required by the law-of-the-circuit. <u>See</u> <u>Id.</u> The cases of <u>Feldman</u>, <u>22 Santa Barbara</u>, and <u>Guillen-Cervantes</u> are not overturned and are valid binding precedent under the law-of-the-circuit. <u>See</u> <u>Hart</u>, 266 F.3d at 1170-71. <u>Thurman</u>, <u>Beecroft</u>, and <u>Mosley</u> are not binding precedent under the law-of-the-circuit. <u>See Id</u>.

This Court finds, under the law-of-the-circuit higher authority exception, <u>Bajakajian</u> does not undercut the theory, the reasoning, and the facts underlying <u>United States v. Feldman,</u> 853 F.2d 648 (9th Cir. 1988), <u>United States v. Real Property located at 22 Santa Barbara Drive</u>, 264 F.3d 860 (9th Cir. 2001), and <u>United States v. Guillen-Cervantes</u>, 566 F. App'x 576 (9th Cir. 2014) and is **not** clearly irreconcilable with them. <u>Feldman</u>, <u>22 Santa Barbara</u>, and <u>Guillen-Cervantes</u> are the law-of-the-circuit cases and apply to this case.

**B. When the three-judge panels for <u>Thurman</u>, <u>Beecroft</u>, and <u>Mosley</u> saw the clearly Irreconcilable Intracircuit Conflict with <u>Feldman</u>, <u>22 Santa Barbara</u>, and <u>Guillen-Cervantes</u>, the three-judge panels were required to request an en banc review.**

The intracircuit conflict rule states where a three-judge panel has a clearly irreconcilable intracircuit conflict, the panel must request sua sponte an en banc review to decide the case, unless the prior cases are distinguishable. The purposes of the intracircuit conflict rule are to ensure conflicts are avoided, the majority of the circuit court judges control uniformity and continuity of circuit decisions, judicial effective administration is achieved, finality of decisions is promoted, and the circuit court will determine the future doctrinal trends of the circuit. <u>See</u>

1   Fed. R. App. P. 35(a); Atonio v. Wards Cove Packing Co., 810 F.2d 1477, 1478-79 (9th Cir.

2   1987) (en banc), *cert. denied*, 485 U.S. 989 (1988); Hart, 266 F.3d at 1179; *Ross*, 226 F.3d at

3   1018; United States v. Am.-Foreign S. S. Corp., 363 U.S. 685, 689-90 (1960); Textile Mills Sec.

4   Corp. v. C.I.R., 314 U.S. 326, 335 (1941). A three-judge panel cannot choose one of the

5   conflicting authorities. See Atonio, 810 F.2d at 1478.

6        Thurman, Beecroft, and Mosley are not distinguishable from Feldman, 22 Santa Barbara,

7   and Guillen-Cervantes because all were illegal proceeds cases where no ownership, no legitimate

8   income, no legal livelihood, no instrumentalities, no facilitating property, and no reporting

9   violation existed. The Thurman, Beecroft, and Mosley three-judge panels should have followed

10  Feldman, 22 Santa Barbara, and Guillen-Cervantes. When a three-judge panel is presented with a

11  clearly irreconcilable intracircuit conflict between Thurman, Beecroft, and Mosley and Feldman,

12  22 Santa Barbara, and Guillen-Cervantes concerning illegal proceeds, the three-judge panels

13  must request an en banc review. See United States v. Hardesty, 977 F.2d 1347, 1348 (9th Cir.

14  1992) (en banc); Antonio, 810 F.2d at 1478-79.

15       Thurman, Beecroft, and Mosley are clearly irreconcilable with Feldman, 22 Santa

16  Barbara, and Guillen-Cervantes for the reasons given in the previous paragraph. The intracircuit

17  conflict rule required the three-judge panels to request sua sponte an en banc review to resolve

18  the clearly irreconcilable intracircuit conflict of these cases. Since the three-judge panels in

19  Thurman, Beecroft, and Mosley did not request an en banc review as required under the

20  intracircuit conflict rule, Feldman, 22 Santa Barbara, and Guillen-Cervantes are not overturned

21  and are valid binding precedent. See Hart, 266 F.3d at 1170-71.

22       **C. The Eighth Amendment Excessive Fines Clause does not apply to Illegal Proceeds.**

23       The United States Supreme Court states, "Traditionally, forfeiture was an action against

24  the tainted property itself and thus proceeded *in rem* …" "wholly unaffected by any criminal

25  proceeding *in personam* …." Honeycutt, 137 S. Ct. at 1634-35 (citation and quotation marks

26  omitted) (quoting The Palmyra, 25 U.S. 1 (1827)). Eight of the States had an equivalent to the

27  Eighth Amendment in their Declarations of Rights or State Constitutions. See Browning-Ferris

28  Indus. of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 264 (1989). After the

1   constitutional and the State conventions adopted the United States Constitution, Congress and

2   the States adopted the Bill of Rights, including the Eighth Amendment. See Browning-Ferris,

3   492 U.S. at 264-267; Solem v. Helm, 463 U.S. 277, 285 n.10 (1983); Ingraham v. Wright, 430

4   U.S. 651, 664-66 (1977). The Eighth Amendment was based on the Art. I, § 9 of the Virginia

5   Declaration of Rights, adopting verbatim the language of the 1689 English Bill of Rights. Id.

6       The 1215 English Magna Carta addressed the excessive taking of legal proceeds, legal

7   property, legal livelihood, and owned property for crimes. The 1215 English Magna Carta did

8   not address illegal proceeds. See Bajakajian, 524 U.S. at 332; Calero-Toledo v. Pearson Yacht

9   Leasing Co., 416 U.S. 663, 682 (1974). The 1689 English Bill of Rights was passed to curb the

10  excessive takings by Kings, Queens, and their judges of legal proceeds, legal property, legal

11  livelihoods, and owned property, not illegal proceeds. See Browning-Ferris, 492 U.S.at 266 67;

12  Ingraham, 430 U.S. at 664-65 and n.33. Since the 1689 English Bill of Rights did not address

13  illegal proceeds, they are not excessive. Because the Eighth Amendment is based on the 1215

14  English Magna Carta, the 1689 English Bill of Rights, and the Virginia Declaration of Rights, it

15  does not address and does not apply to illegal proceeds, which are not the defendants'

16  instrumentalities, legal proceeds, legal property, legal livelihoods, facilitating property, and

17  owned property.

18      The United States Congress adopted only statutory in rem civil forfeitures, rejecting all

19  other types of forfeitures until 1970. See Austin v. United States, 509 U.S. 602, 611-12 (1993);

20  Calero-Toledo, 416 U.S. at 680-83; Bajakajian, 524 U.S. at 332 and n.7. The statutory civil

21  forfeitures forfeited facilitating property and instrumentalities, namely property used to violate

22  the law. See Austin, 509 U.S. at 612-15; Calero-Toldeo, 416 U.S. at 682; United States v. Parcel

23  of Land, Bldgs., Appurtenances & Improvements, Known as 92 Buena Vista Ave., Rumson,

24  N.J., 507 U.S. 111, 121–23 (1993) (plurality). In 1970's, the United States Congress approved

25  criminal forfeitures for the first time. See Bajakajian, 524 U.S. at 332 n.7; 92 Buena Vista Ave.,

26  507 U.S. at 121–23. As time passed, Congress added more criminal forfeitures and provided in

27  2000 that the hundreds of civil forfeiture statutes could also be criminal forfeitures. See 28

28  U.S.C. § 2461(c); Newman, 659 F.3d at 1239.

1        In 1978, illegal drug proceeds became forfeitable. In 1984, illegal RICO proceeds

2    became forfeitable. In 1986, illegal proceeds became forfeitable for other crimes. See 92 Buena

3    Vista Ave., 507 U.S. at 121 n.16. In 1989, the reporting violation forfeitures came into existence

4    when the Supreme Court stated the funds were not an instrumentality, were not facilitating

5    property, and were not illegal proceeds. See Bajakajian, 524 U.S. at 329-334, 338, 340-343.

6    Illegal proceeds forfeitures are different than reporting violation forfeitures, instrumentality

7    forfeitures, and facilitating property forfeitures. Bajakajian, Austin, and Alexander did not focus

8    on civil forfeitures versus criminal forfeitures but focused on punishment. Austin and Alexander

9    focused on whether criminal and civil facilitating property was punishment. See Austin, 509 U.S.

10    at 604-05 (holding that a civil forfeiture of a mobile home and an auto body shop under the

11    facilitating forfeiture statutes, 21 U.S.C. § 881(a)(4) and (a)(7), is punishment and must be

12    analyzed under the Excessive Fines Clause); Alexander v. United States, 509 U.S. 544, 558-59

13    (1993) (holding the criminal forfeiture of defendant's entire business under the facilitating

14    forfeiture statute, 18 U.S.C. § 1963(a)(1), is punishment and must be analyzed under the

15    Excessive Fines Clause). The discussion in Austin and Alexander centers on the difference

16    between instrumentality and facilitating property forfeitures that were historically not

17    punishment versus the modern civil and criminal facilitating property forfeitures being

18    punishment due to the innocent owner defenses. "Thus, the question is not … whether forfeiture

19    under §§ 881(a)(4) and (a)(7) is civil or criminal, but rather whether it is punishment." Austin,

20    509 U.S. at 610 (ellipsis added).

21        The Supreme Court in Austin and Alexander determined modern civil and criminal

22    facilitating forfeitures statutes are punishment, invoking the Eighth Amendment. 0Austin, 509

23    U.S. at 604 and 610-622; Alexander, 509 U.S. at 558-59. Austin and Alexander addressed

24    facilitating property, not illegal proceeds. Alexander did not address the millions of illegal

25    proceeds that were forfeited under 18 U.S.C. § 1963(a)(3). The lower courts found the millions

26    of illegal proceeds did not violate the Eighth Amendment. See United States v. Alexander, 32

27    F.3d 1231, 1236 (8th Cir. 1994); United States v. Alexander, 108 F.3d 853, 855 (8th Cir. 1997).

28    Additionally, the Supreme Court and the Ninth Circuit hold defendants do not own illegal

1  proceeds. See $4,224,958.57, 392 F.3d at 1004; Caplin & Drysdale, Chartered, 491 U.S. at 626;

2  Hooper, 229 F.3d at 821-22. Since defendants cannot own illegal proceeds, the defendants'

3  Eighth Amendment rights are not violated when forfeiting illegal proceeds.

4          This Court finds the Ninth Circuit adopted the illegal proceeds grossly disproportionate

5  analysis in Feldman, 22 Santa Barbara, and Guillen-Cervantes and that since illegal proceeds are

6  not facilitating property, are not instrumentalities, are not a legal livelihood, are not legal

7  proceeds, are not owned, and are not a reporting violation, the government does not violate the

8  defendants' rights of the Excessive Fines Clause of the Eighth Amendment when forfeiting

9  illegal proceeds.

10         Both prior to and subsequent to the Bajakajian decision, like the Ninth Circuit, the

11 Second, Fifth, Sixth, Seventh, Eighth, and Tenth Circuits have held illegal proceeds do not

12 violate the Eighth Amendment for the reasons given above. See United States v. Sum of

13 $185,336.07 U.S. Currency Seized from Citizen's Bank Account L7N01967, 731 F.3d 189, 194

14 (2d Cir. 2013); United States v. Tilley, 18 F.3d 295, 300 (5th Cir.), reh'g denied, 22 F.3d 1096

15 (5th Cir.), cert. denied, 513 U.S. 1015 (1994); United States v. Betancourt, 422 F.3d 240, 250-51

16 (5th Cir. 2005); United States v. Salinas, 65 F.3d 551, 554 (6th Cir. 1995); United States v.

17 Dusenbery, 223 F.3d 422, 425 (6th Cir. 2000), aff'd, 534 U.S. 161 (2002); Smith v. United

18 States, 76 F.3d 879, 882 (7th Cir. 1996); United States v. Funds on Deposit at Bank One Chicago

19 Account 1110010428312, 393 F. App'x. 391, 392 (7th Cir. 2010); Alexander, 32 F.3d at 1236;

20 Alexander, 108 F.3d at 855; United States v. $63,530, 781 F.3d 949, 957 (8th Cir. 2015); United

21 Staets v. One Parcel of Real Property Described as Lot 41, Berryhill Farm Estates, 128 F.3d

22 1386, 1395 (10th Cir. 1997); United States v. $189,825.00, 216 F.3d 1089, 7 (10th Cir. 2000)

23 (Table).

24         This Court finds United States v. Bajakajian, 524 U.S. 321 (1998) does not apply to the

25 facts of this case because the forfeitable amounts are illegal proceeds of frauds and conspiracy to

26 commit such frauds and are not legal income or property, are not legal livelihood, are not

27 facilitating property, are not instrumentalities, are not owned by the defendants, and are not

28 subject to a reporting violation and finds the forfeiture of $4,920,000.00 as to Brandel and

1   $876,750 as to Warras does not violate the Excessive Fines Clause of the Eighth Amendment

2   because it is illegal proceeds.

3       **D. The _Bajakajian_ Analysis shows the forfeitures are not grossly disproportionate.**

4       The defendants must make a prima facie showing of an Eighth Amendment violation. See

5   Feldman, 853 F.2d at 663; United States v. Busher, 817 F.2d 1409, 1415 (9th Cir. 1987); United

6   States v. Ladum, 141 F.3d 1328, 1349 (9th Cir. 1998); Newman, 659 F.3d at 1241 n.4. This

7   Court finds the defendants failed to make any showing of an Eighth Amendment violation.

8   Bajakajian held a reporting violation forfeiture was punishment. See Id. at 327-28 (citing Austin,

9   509 U.S. at 609-10 and 619). Bajakajian adopted the Cruel and Unusual Punishments Clause

10  grossly disproportionate analysis for the Excessive Fines Clause for reporting violation

11  forfeitures. See Id. at 334-340 (citing Solem, 463 U.S. at 288; Rummel v. Estelle, 445 U.S. 263,

12  271 (1980)).

13      Based on the four factors of the Bajakajian grossly disproportionate analysis applied to

14  these facts, this Court finds Defendants' forfeiture orders are not grossly disproportionate to the

15  gravity of the crimes and do not violate the Excessive Fines Clause of the Eighth Amendment.

16  This Court finds the defendants committed wire fraud, securities fraud, and conspiracy to

17  commit such fraud for approximately four years, obtaining approximately $10,399,725 of illegal

18  proceeds. The criminal activities were related to one another, and they committed money

19  laundering to use the illegal proceeds for their personal use. The defendants "fit into the class of

20  persons for whom the [forfeiture] statute was principally designed:" those who commit wire

21  fraud, securities fraud, and conspiracy to commit such fraud and money laundering the illegal

22  proceeds from those crimes. See Bajakajian, 524 U.S. at 338; United States v. Mackby, 339 F.3d

23  1013, 1017 (9th Cir. 2003). The defendants' crimes were extensive and grave. See Bajakajian,

24  524 U.S. at 336, 338-39.

25      Defendants' crimes caused many people excessive harm and damage: loss of dignity, loss

26  of self-respect, loss of jobs, houses, and businesses, not only for the victims that were defrauded

27  but also the families' members and companies' employees who lost their jobs because of the

28  fraud. The United States also had "loss to the public fisc[]" Bajakajian, 524 U.S. at 339. Instead

of the money going to companies to expand, to add employees, and to grow the economy, which would have increased taxes for the government, the defendants used the illegal proceeds for greedy purposes of spending them on themselves and failing to pay taxes on the fraudulently obtained illegal proceeds.

### E. Application of the <u>Bajakajian</u> analysis to Warras concerning the Excessive Fines Clause

#### 1. Congressional Imprisonment.

If the Court applied the congressional maximum imprisonment term for Warras, the term could be 245 years consecutively. <u>See</u> 18 U.S.C. §§ 371, 1343; 15 U.S.C. §§ 78j(b), 78ff; Presentence Investigation Report ("PSR"), p. 1, 19. If the Court were to group each type of crime for the congressional maximum imprisonment term, Warras could be sentenced to 45 years consecutively. The congressional maximum imprisonment shows the serious gravity of Warras's crimes.

#### 2. U.S. Sentencing Guidelines Imprisonment.

If the Court applied the U.S. Sentencing Guidelines maximum imprisonment term for Warras, the term could be 108 months. PSR p.7-8, 19; U.S.S.G. §§ 3D1.2(d), 2B1.1(a)(1), 2B1.1(b)(1)(J), 2B1.1(b)(2)(A), 2B1.1(b)(9)(B), 2B1.1(b)(10)(C), 3C1.1, 5A. The U.S. sentencing guidelines maximum imprisonment shows the serious gravity of Warras's crimes.

#### 3. Congressional Fines.

If the Court applied the congressional maximum fine consecutively to Warras, it could be a total of $71,598,900: $20,799,450 for the Conspiracy, $20,799,450 for the Wire Fraud, and $30,000,000 for the Security Fraud. PSR, p. 1, 19; 15 U.S.C. §§ 78j(b) and 78ff; 18 U.S.C. §§ 371, 1343, 3571, 3571(b)(1), 3571(b)(2), 3571(b)(3), 3571(b)(1)-(7), 3571(d); <u>United States v. W. Coast Aluminum Heat Treating Co.</u>, 265 F.3d 986, 988, 990 (9th Cir. 2001). The congressional maximum fines show the serious gravity of Warras's crimes.

#### 4. U.S. Sentencing Guidelines Fines.

If the Court applied the U.S. Sentencing Guidelines maximum fine for Warras, it could be $30,000,000. U.S.S.G. §§ 5E1.2(c)(2), 5E1.2(c)(3), and 5E1.2(c)(4);18 U.S.C. §

3571(b)(1), b(2) and (d); 15 U.S.C. §§ 78j(b) and 78ff; PSR, p.19; <u>United States v. Grossi</u>, 359 F. App'x 830, 832 (9th Cir. 2009). The U.S. sentencing guidelines maximum fines show the serious gravity of Warras's crimes.

**F. Application of the *Bajakajian* analysis to Brandel concerning the Excessive Fines Clause**

**1. Congressional Imprisonment**.

If the Court applied the congressional maximum imprisonment term for Brandel, the term could be 345 years consecutively. 15 U.S.C. §§ 78j(b), 78ff; 18 U.S.C. §§ 371, 1343; PSR, p. 1-2, 15, 20. If the Court were to group each type of crime for the congressional maximum imprisonment term, Brandel could be sentenced to 45 years consecutively. The Congressional imprisonment maximum shows the serious gravity of Brandel's crimes.

**2. U.S. Sentencing Guidelines Imprisonment.**

If the Court applied the U.S. Sentencing Guidelines maximum term of imprisonment for Brandel, the term could be 108 months. 18 U.S.C. § 371; PSR p. 1, 8, 15, 20; U.S.S.G. §§ 3D1.2(d), 2B1.1(a)(1), 2B1.1(b)(1)(J), 2B1.1(b)(2)(A), and 2B1.1(b)(10)(C), 5A. The U.S.S.G. imprisonment maximum shows the serious gravity of Brandel's crimes.

**3. Congressional Fines.**

If the Court applied the Congressional maximum fine consecutively to Brandel, it could be a total of $81,598,900: $20,799,450 for the Conspiracy, $20,799,450 for the Wire Fraud, and $40,000,000 for the Security Fraud. 15 U.S.C. §§ 78j(b) and 78ff; 18 U.S.C. §§ 371, 1343, 3571(b)(1); 3571(b)(2), 3571(b)(3), 3571(b)(1)-(7), 3571(d); <u>W. Coast Aluminum</u>, 265 F.3d at 988 and 990; PSR, p. 1, 12, 16, 20. The Congressional maximum fines show the serious gravity of Brandel's crimes.

**4. U.S. Sentencing Guidelines Fines show the Serious Gravity of Brandel's crimes.**

If the Court applied the U.S. Sentencing Guidelines maximum fine for Brandel, it could be $45,000,000. U.S.S.G. §§ 5E1.2(c)(2), 5E1.2(c)(3), 5E1.2(c)(4); 15 U.S.C. §§ 78j(b) and 78ff;18 U.S.C. § 3571(b)(1), 3571(b)(2) and (d); PSR, p.19; <u>Grossi</u>, 359 F. App'x at 832.

- 21 -

1   The U.S.S.G. maximum fines show the serious gravity of Brandel's crimes.

2   Since Warras's forfeiture of $876,750 and Brandel's forfeiture of $4,920,000.00

3   are much less than the fines this Court could have ordered them to pay, their criminal forfeiture

4   money judgments do not violate the Eighth Amendment and are presumptively constitutional.

5   *Grossi*, 359 F. App'x at 832; United States v. 817 N.E. 29th Drive, Wilton Manors, Florida, 175

6   F.3d 1304, 1309 (11th Cir. 1999); United States v. Dicter, 198 F.3d 1284 (11th Cir. 1999);

7   United States v. Moyer, 313 F.3d 1082 (8th Cir. 2002); United States v. Wallace, 389 F.3d 483,

8   486 (5th Cir. 2004); United States v. Bernitt, 392 F.3d 873, 880-81 (7th Cir. 2004); United States

9   v. Heldeman, 402 F.3d 220, 223 (1st Cir. 2005); United States v. Elfgeeh, 515 F.3d 100, 139 (2d

10  Cir. 2008).

11  When applying the Bajakajian gross disproportionality analysis, the amount that

12  can be forfeited is a multiple of the maximum amount of the fine. United States v. $100,348, 354

13  F.3d 1110, 1122-24 (9th Cir. 2004) (inferring two times the U.S. Sentencing Guidelines

14  maximum fine of $5,000); Mackby, 339 F.3d at 1015, 1017 (a multiple of more than 12.5 times

15  the amount of the loss); United States v. $132,245 in U.S. Curency, 764 F.3d 1055, 1060 (9th

16  Cir. 2014) (explaining that "forfeiture does not per se violate the Eighth Amendment simply

17  because the amount to be forfeited exceeds the maximum fine under the Sentencing

18  Guidelines."); United States v. Riedl, 82 F. App'x 538 (9th Cir. 2003) (In a drug and money

19  laundering case, the Ninth Circuit found a forfeiture order that was 12 to 13 times the maximum

20  sentencing guideline fine was not excessive.).

21  Since the forfeiture amounts can be a multiple of the fines, this Court finds the

22  defendants' criminal forfeiture money judgments do not violate the Excessive Fines Clause

23  under Bajakajian.

24  **G. Warras's total punishment does not violate the Eighth Amendment.**

25  Since restitution is not punishment (Davis, 706 F.3d at 1084; Newman, 659 F.3d at 1241;

26  Hunter, 618 F.3d at 1064), the district court ordering the payment of restitution does not violate

27  the Excessive Fines Clause or Cruel and Unusual Punishments Clause of the Eight Amendment

28  because it is already inherently proportional and is inherently linked to the offender's culpability.

1   Beecroft, 825 F.3d at 997, *abrogated on other grounds*, Honeycutt, 137 S. Ct. at 1632 and 1635;

2   Dubose, 146 F.3d at 1147.

3        The Court finds Warras's total punishment, including the forfeiture and the restitution, is

4   not grossly disproportionate and does not violate the Excessive Fines Clause or the Cruel and

5   Unusual Punishments Clause of the Eighth Amendment. This Court finds Warras's total

6   punishment versus his actual punishment are the following:

7           Congressional Maximum Imprisonment:     245 years

8           U.S.S.G. Maximum Imprisonment:     108 months

9           Actual Imprisonment:     87 months to run

10                          concurrently with 60 months

11          Congressional Maximum Fine:     $51,400,000

12          U.S.S.G. Maximum Fine:     $30,000,000

13          Actual Fine:     $0

14          Special Assessment     $1,300

15          Forfeiture     $876,750

16          Restitution     $6,475,000

17          Statutory Maximum Supervised Release     Up to 3 years: PSR, p.

18                          19

        U.S.S.G. Maximum Supervised Release     3 years: PSR, p. 20,

19                          ¶133

20          Actual Supervised Release     3 years concurrent

21       This Court finds Warras's 87-month sentence is well within the statutory 345 years

22  sentence and is less than the Guideline 108 month sentence. This Court did not order a fine as

23  part of his sentence though the statutory maximum fine was $71,598,900 and the Guideline

24  maximum fine was $30,000,000. Warras's fraud with his coconspirators caused $10,399,725

25  damages (Ex. I, N). When this Court ordered restitution of $6,475,000 jointly and severally

26  liable as to the defendants and the forfeiture order of $876,750, based on the fine of $71,598,900

27  or $30,000,000 that was not ordered, the restitution amount and the forfeiture amount combined

28  is less than the fine. The restitution which is not punishment and the forfeiture added together

totals $7,351,750. When that amount is divided by the Congressional fine of $71,598,900

($7,351,750/$71,598,900 = .103), the amount is less than 11% of the fine. When the $7,351,750

is divided by the U.S.S.G. fine of $30,000,000 ($7,351,750/$30,000,000 = .245), the amount is

about 25% of the fine.

Since Warras's total punishment is much less than what this Court could have sentenced

him, his total punishment is not grossly disproportionate and does not violate the Excessive Fines

Clause or the Cruel and Unusual Punishments Clause of the Eighth Amendment. Feldman, 853

F.2d at 664; Busher, 817 F.2d 1409.

**H. Brandel's total punishment does not violate the Eighth Amendment.**

Since restitution is not punishment (Davis, 706 F.3d at 1084; Newman, 659 F.3d at 1241;

Hunter, 618 F.3d at 1064), the district court ordering the payment of restitution does not violate

the Excessive Fines Clause or Cruel and Unusual Punishments Clause of the Eight Amendment

because it is already inherently proportional and is inherently linked to the offender's culpability.

Beecroft, 825 F.3d at 997, *abrogated on other grounds*, Honeycutt, 137 S. Ct. at 1632 and 1635;

Dubose, 146 F.3d at 1147.

This Court finds Brandel's total punishment, including the forfeiture and the restitution,

is not grossly disproportionate and does not violate the Excessive Fines Clause or the Cruel and

Unusual Punishments Clause of the Eighth Amendment. This Court finds Brandel's total

punishment versus his actual punishment are the following.

| | |
|---|---|
| Congressional Maximum Imprisonment: | 345 years |
| U.S.S.G. Maximum Imprisonment: | 108 months |
| Actual Imprisonment: | 87 months to run concurrently with 60 months |
| Congressional Maximum Fine: | $81,598,900 |
| U.S.S.G. Maximum Fine: | $45,000,000 |
| Actual Fine: | $0 |
| Special Assessment: | $1,800: 18 U.S.C. § 3013 |
| Forfeiture: | $4,920,000 |

1   Restitution:                                $6,475,000, Exhibit I

2   Congressional Maximum Supervised Release Up to 3 years: PSR, p. 19

3   U.S.S.G. Maximum Supervised Release        3 years: PSR, p. 20, ¶133

4   Actual Supervised Release                  3 years concurrent

5           This Court finds Brandel's 87-month sentence is well within the statutory 345 years

6   sentence and is less than the U.S.S.G. 108 month sentence. This Court did not order Brandel to

7   pay a fine as part of his sentence though it could have been a Congressional maximum fine of

8   $81,598,900 or U.S.S.G. maximum fine of $45,000,000. Brandel's fraud with his coconspirators

9   caused $10,399,725 damages (Ex I, N). When this Court ordered restitution of $6,475,000 jointly

10  and severally liable as to the defendants and the forfeiture order $4,920,000 as to Brandel, based

11  on the fine of $81,598,900 or $45,000,000 that was not ordered, the restitution amount and the

12  forfeiture amount combined is less than the fine. The restitution which is not punishment and the

13  forfeiture added together totals $11,395,000.00. Since Brandel's total punishment is much less

14  than to what this Court could have sentenced him, Brandel's total punishment is not grossly

15  disproportionate and does not violate the Excessive Fines Clause or the Cruel and Unusual

16  Punishments Clause of the Eighth Amendment. Feldman, 853 F.2d at 664.

17  **V. SUMMARY**

18          Accordingly, IT IS HEREBY ORDERED that the Government's Motions for Forfeiture

19  and Restitution (#296/297/298/374) are **GRANTED per this order and the Minute Order**

20  **(#368)**;

21          IT IS FURTHER ORDERED that the Government's Motion to Strike (#366) is

22  **GRANTED**;

23          IT IS FURTHER ORDERED that Defendant Brandel's Motion to Adjust Restitution and

24  Forfeiture (#371) is **DENIED**;

25          IT IS FURTHER ORDERED that the Government's Motion to Add GW's $100,000 to

26  Restitution (#372) is **GRANTED**;

27          IT IS FURTHER ORDERED that the Government's Motion to Strike (#382) is

28  **DENIED**;

1    IT IS FINALLY ORDERED that the Amended Judgment (#413) is **VACATED as**

2  **improvidently entered as no Judgment had been entered, awaiting the present opinion and**

3  **order on restitution and the final order of forfeiture**.[7]

4  ## VI. CONCLUSION

5    Accordingly, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Anthony

6  Brandel and James Warras pay restitution of $6,475,000.00 jointly and severally liable along

7  with the other defendants convicted in this case;

8    IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the United States

9  recover from James Warras the in personam criminal forfeiture money judgment of $876,750.00

10  pursuant to Fed. R. Crim. P. 32.2(b)(4)(A) and (B); 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. §

11  2461(c); and 21 U.S.C. § 853(p).

12    IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the United States

13  recover from Anthony Brandel the in personam criminal forfeiture money judgment of

14  $4,920,000.00 pursuant to Fed. R. Crim. P. 32.2(b)(4)(A) and (B); 18 U.S.C. § 981(a)(1)(C) with

15  28 U.S.C. § 2461(c); and 21 U.S.C. § 853(p).

16    IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Clerk send copies

17  of this Order to all counsel of record and three certified copies to the United States Attorney's

18  Office, Attention Asset Forfeiture Unit.

19  DATED: May 13, 2019.

20

21

22

23  KENT J. DAWSON

24  UNITED STATES DISTRICT JUDGE

25

26    [7] The parties agree that Defendants must be present per Federal Rule of Criminal Procedure 43 at sentencing.

27  Accordingly, the Court will set a date and time for oral pronouncement of the order on restitution and final order of forfeiture. However, sentencing having been heard and the issue of restitution more than fully briefed, no further

28  argument will be considered by the Court. Should either Defendant wish to sign a written waiver of appearance per Rule 43(c)(2), final judgment will be entered forthwith with the understanding, that unless withdrawn, Defendant Brandel will first receive a hearing on his motion to represent himself.

# EXHIBIT A

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 2:13-CR-439-KJD-(VCF) |
| | ) | |
| Plaintiff, | ) | Restitution Victims and the Amount owed |
| | ) | Each Victim |
| v. | ) | |
| | ) | |
| ANTHONY BRANDEL and | ) | |
| JAMES WARRAS, | ) | |
| | ) | |
| Defendants. | ) | |

Anthony Brandel and James Warras restitution payments will go to these victims for these losses:

| VICTIMS | LOSS AMOUNT |
|---|---|
| GL | $ 225,000 |
| N&NA | $ 350,000 |
| JS | $ 300,000 |
| JH | $ 150,000 |
| EK | $ 430,000 |
| MB | $ 250,000 |
| GD | $ 200,000 |
| MK | $ 200,000 |
| TF | $1,000,000 |
| JA | $ 540,000 |
| WB | $ 330,000 |
| LB | $ 300,000 |
| DM | $ 400,000 |
| GW | $ 100,000 |
| JE | $ 500,000 |
| W&CG | $1,200,000 |
| Total | $6,475,000 |